# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| R.B., S.C., J.S., and J.F., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BAPTIST HEALTHCARE SYSTEM, INC.,<br><br>Defendant. | Case No. 3:26-cv-00295-CHB<br><br><br>The Honorable Claria H. Boom,<br>United States District Court Judge |

## DEFENDANT BAPTIST HEALTHCARE SYSTEM, INC.'S RULE 12(b)(6) MOTION TO DISMISS & MEMORANDUM IN SUPPORT

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND..................................................................................................2

    A.    PLAINTIFFS ALLEGE BAPTIST HEALTH VIOLATED THEIR PRIVACY RIGHTS BY EMBEDDING DIGITAL ANALYTIC TOOLS ON ITS PUBLIC WEBSITE ............................2

    B.    PLAINTIFFS ALLEGE THE CLAIMED DISCLOSURES VIOLATED THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT OF 1996...............................3

    C.    PLAINTIFFS ALLEGE BAPTIST HEALTH MADE THE CLAIMED DISCLOSURES FOR ADVERTISING PURPOSES. ...................................................................................4

LAW AND ARGUMENT ........................................................................................................5

I.    STANDARD OF REVIEW. ............................................................................................5

II.    THE COURT SHOULD DISMISS PLAINTIFFS' FEDERAL WIRETAP ACT CLAIM UNDER THE ONE-PARTY CONSENT RULE...............................6

    A.    CONGRESS ADOPTS A BROAD ONE-PARTY CONSENT RULE FOR FEDERAL LAW SUBJECT TO A CRIME-TORT EXCEPTION ..................................................................6

    B.    THE SIXTH CIRCUIT HOLDS THAT WHAT MATTERS FOR THE EXCEPTION IS THE DEFENDANT'S "*SPECIFIC UNLAWFUL INTENT* IN MAKING *THESE TAPES.*" ....................8

    C.    THE FEDERAL WIRETAP ACT IS A FELONY CRIMINAL STATUTE AND A *MENS REA* REQUIREMENT IS AN ESSENTIAL COMPONENT OF OUR CRIMINAL LAW ..........10

    D.    THE USE OF THE LANGUAGE "FOR THE PURPOSE OF" SETS FORTH THE ONE-PARTY CONSENT RULE'S INDEPENDENT *MENS REA* REQUIREMENT.........................11

    E.    ADVERTISING IS A NON-CRIMINAL, NON-TORTIOUS PURPOSE ...............................13

    F.    THE DECISIONS HOLDING THAT A HIPAA VIOLATION EQUALS A WIRETAP ACT VIOLATION ARE WRONG. ....................................................................................15

III.    PLAINTIFFS ALSO FAIL TO STATE A CLAIM UNDER EITHER KENTUCKY OR ILLINOIS COMMON LAW. ..................................................17

    A.    NEITHER KENTUCKY NOR ILLINOIS LAW RECOGNIZES PLAINTIFFS' CLAIM FOR ALLEGED BREACH OF CONFIDENCE. .....................................................................18

    B.    PLAINTIFFS' ALLEGED INVASION OF PRIVACY HARM IS GROUNDED IN A CLAIMED DISCLOSURE, NOT AN INTRUSION .........................................................19

i

ii

C.    PLAINTIFFS DO NOT ALLEGE DETRIMENT OR EXPENSE FOR THEIR UNJUST ENRICHMENT CLAIM ......................................................................................21

D.    PLAINTIFFS DO NOT ADEQUATELY ALLEGE THE BASIC ELEMENTS FOR FORMING A CONTRACT FOR THEIR IMPLIED CONTRACT CLAIM. ............................22

**CONCLUSION** ........................................................................................................**25**

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Hosp. Ass'n v. Becerra*,
    738 F. Supp. 3d 780 (N.D. Tex. 2024) ...................................................3, 4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...................................................................6, 24

*Bartnicki v. Vopper*,
    532 U.S. 514 (2001)............................................................................6

*Bates v. State Bar of Az.*,
    433 U.S. 350 (1977)..........................................................................14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................5, 6, 24

*Brody v. Finch Univ. of Health Sciences/The Chicago Med. School*,
    698 N.E.2d 257 (Ill. Ct. App. 1998) ................................................23, 24

*Caro v. Weintraub*,
    618 F.3d 94 (2d Cir. 2010).................................................................16

*Cleary v. Philip Morris, Inc.*,
    656 F.3d 511 (7th Cir. 2011) ..............................................................22

*Cooper v. Mount Sinai Health Sys., Inc.*,
    742 F. Supp. 3d 369 (S.D.N.Y. 2024).....................................................15

*Counterman v. Colorado*,
    600 U.S. 66 (2023)..........................................................................16

*Davis. v. Michigan Dep't of Treasury*,
    489 U.S. 803 (1989)..........................................................................10

*Desnick v. Am. Broad. Cos., Inc.*,
    44 F.3d 1345 (7th Cir. 1995) ..............................................................15

*Dinerstein v. Google, LLC*,
    484 F. Supp. 3d 561 (N.D. Ill. 2020) .....................................................19

*Doe II v. MedStar Health, Inc.*,
    2026 WL 709810 (Md. Ct. App. Mar. 13, 2026)............................................2

iii

*Doe v. Baum*,
    903 F.3d 575 (6th Cir. 2018) ..................................................................................24

*Doe v. Chao*,
    540 U.S. 614 (2004)...............................................................................................10

*In re E.I. du Pont de Nemours & Co. C-8 Personal Injury Litig.*,
    87 F.4th 315 (6th Cir. 2023) ...................................................................................5

*Elonis v. United States*,
    575 U.S. 723 (2015)...............................................................................................10

*Forman v. TriHealth, Inc.*,
    40 F.4th 443 (6th Cir. 2022) ...................................................................................6

*Furtula v. University of Kentucky*,
    438 S.W.3d 303 (Ky. 2014)..............................................................................23, 24

*Gelbard v. United States*,
    408 U.S. 41 (1972)...................................................................................................6

*Hartley v. University of Chicago Medical Center*,
    2023 WL 7386060 (N.D. Ill. Nov. 8, 2023) ...........................................................20

*Hensley Mfg. v. ProPride, Inc.*,
    579 F.3d 603 (6th Cir. 2009) .................................................................................17

*In re High Fructose Corn Syrup Antitrust Litig.*,
    216 F.3d 621 (7th Cir. 2000) .................................................................................13

*HPI Health Care Servs., Inc. v. Mt. Vernon Hospital, Inc.*,
    131 Ill.2d 145 (1989) .............................................................................................21

*K-Stones, Inc. v. Ko*,
    2025 IL App (2d) 230328 (Ill. Ct. App. 2025) ......................................................21

*Kaplon v. Chase*,
    690 S.W.2d 761 (Ky. Ct. App. 1985) .....................................................................18

*Keeney v. Keeney*,
    223 S.W.3d 843 (Ky. Ct. App. 2012) .....................................................................18

*Kidd v. Thomson Reuters Corp.*,
    925 F.3d 99 (2d Cir. 2019).....................................................................................12

*Kurowski v. Rush System for Health*,
    2023 WL 8544084 (N.D. Ill. Dec. 11, 2023)..........................................................15

iv

*Kurowski v. Rush System for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) ...................................................................................20

*Kurowski v. Rush System for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ............................................................................19, 20

*LaFleur v. Yardi Sys., Inc.*,
168 F.4th 410 (6th Cir. 2026) ..............................................................................................17

*Lawlor v. N. Am. Corp. of Ill.*,
2012 IL 112530, 983 N.E.2d 414 (2012).............................................................................19

*Leocal v. Ashcroft*,
534 U.S. 1 (2004)..................................................................................................................10

*Lovgren v. Citizens First Nat. Bank of Princeton*,
126 Ill.2d 411, 534 N.E.2d 987 (1989) ............................................................................8, 20

*LVRC Holdings, LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009) .............................................................................................10

*Martinez v. Mentavi*,
2025 WL 3780427 (W.D. Mich. Oct. 9, 2025).....................................................................16

*Matthews v. Chicago Tran. Author.*,
2016 IL 117638 (2016) .........................................................................................................23

*McCall v. Courier-Journal and Louisville Times Co.*,
623 S.W.2d 882 (Ky. 1982) ..................................................................................................20

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024)..............................................................................................................14

*Morissette v. United States*,
342 U.S. 246 (1952) (Jackson, J.)...................................................................................10, 11

*Mount v. PulsePoint, Inc.*,
2016 WL 5080131 (S.D.N.Y. Aug. 17, 2016)......................................................................22

*Packingham v. North Carolina*,
582 U.S. 98 (2017)................................................................................................................14

*Pearce v. Whitenack*,
440 S.W.2d 392 (Ky. Ct. App. 2014) ...................................................................................20

*Perkins v. Daugherty*,
722 S.W.2d 907 (Ky. Ct. App. 1987) ...................................................................................23

*Reno v. Am. Civil Liberties Union*,
521 U.S. 844 (1997)..........................................................................................................14

*Ruan v. United States*,
597 U.S. 450 (2022).....................................................................................................10, 17

*Sharber v. Sharber*,
2013 WL 3013583 (Ky. Ct. App. June 14, 2013)...............................................................18

*State v. Wilson*,
830 N.W.2d 849 (Minn. 2013)..........................................................................................11

*Stinson v. Yum! Brands, Inc.*,
2025 WL 2755879 (W.D. Ky. Aug. 29, 2025) ....................................................................19

*Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*,
540 S.W.3d 770 (Ky. 2017)..............................................................................................21

*Tilton v. Playboy Entm't Grp., Inc.*,
554 F.3d 1371 (11th Cir. 2009) ....................................................................................11, 16

*Traficant v. C.I.R.*,
884 F.2d 258 (6th Cir. 1989) ..............................................................................9, 10, 12, 14

*Tragenza v. Great Am. Commc'ns Co.*,
12 F.3d 717 (7th Cir. 1993) .............................................................................................17

*United States v. Bailey*,
444 U.S. 394 (1980)....................................................................................................11, 16

*United States v. Fortier*,
956 F.3d 563 (8th Cir. 2020) ...........................................................................................11

*United States v. Gonyea*,
140 F.3d 649 (6th Cir. 1998) ...........................................................................................12

*United States v. Jiau*,
734 F.3d 147 (2d Cir. 2013)............................................................................................16

*United States v. Kimes*,
246 F.3d 800 (6th Cir. 2001) ...........................................................................................12

*United States v. Ramamoorthy*,
949 F.3d 955 (6th Cir. 2020) ...........................................................................................12

*United States v. Underhill*,
813 F.2d 105 (6th Cir. 1987) ..........................................................................................8, 9

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
  425 U.S. 748 (1976)............................................................................................................13

*Vanhook Enter., Inc. v. Kay & Kay Contractng, LLC*,
  543 S.W.3d 569 (Ky. 2018)...............................................................................................22

*Viviali v. One Point HR Sols., LLC*,
  2025 WL 1158740 (E.D. Ky. Apr. 21, 2025) .....................................................................18

*In re Zynga Privacy Litig.*,
  750 F.3d 1098 (9th Cir. 2014) ...........................................................................................6

**Statutes, Rules & Other Authorities**

18 U.S.C. § 2251............................................................................................................11

18 U.S.C. § 2511(2)(d) ........................................................................................ *passim*

42 U.S.C. § 1320d-6 .................................................................................................1, 15, 17

114 CONG. REC. 14682 (May 23, 1968) ................................................................................7

S. REP. 90-1097, 90th Cong., 2nd Sess., 1968 U.S.C.C.A.N. 2112.................................................6

DEP'T OF JUSTICE, *Criminal Resource Manual*, CRM 1000-1499 .....................................................9

FED R. CIV. PRO. RULE 12...................................................................................................1, 25

MODEL PENAL CODE § 2.02(2)(a) ...........................................................................................12

RESTATEMENT (SECOND) OF TORTS § 652B, cmt. a..........................................................................20

WAYNE R. LAFAVE & JENS DAVID OHLIN, *Criminal Law*, § 5.2 (7th Ed. 2023)......................11, 12

**INTRODUCTION**

Over the course of the past several years the federal Wiretap Act has been weaponized by plaintiffs' class action attorneys to sue health care providers for punitive claims for statutory penalties in the absence of any real harm for using so-called "tracking technologies" on their public websites. The theory of these claims is that in using digital analytic tools on their public websites, these healthcare providers violated the Health Insurance Portability and Accountability Act of 1996 (HIPAA), *see* 42 U.S.C. 1320d-6(a), and because they violated HIPAA they necessarily violated the federal Wiretap Act as well.

Such is the theory of plaintiffs' Complaint against defendant Baptist Healthcare System, Inc. (Baptist Health) in this case. (Dkt. # 1, *Compl.* ¶¶ 46-47, 226.) This theory is wrong and the Court should reject it. The federal Wiretap Act is a felony criminal statute, setting forth its own independent *mens rea* requirement. Thus, whether or not a defendant might have violated some other law does not in turn dictate the outcome of whether or not plaintiffs can adequately state a claim under the federal wiretap statute.

And here, plaintiffs fail to state a claim because Baptist Health's *purpose* in using digital analytic tools on its public website was not criminal. To the contrary, under plaintiffs' allegations, this purpose was to engage in speech, and to analyze the effectiveness of that speech. As plaintiffs puts it most basically: "the use of patient data *for advertising* in the absence of express written consent for its own financial gain." (Dkt. # 1, *Compl.* ¶ 178; *see also id.* ("enhanced advertising services and more cost-effective marketing on its platform"); *id.*, ¶¶ 180-181 (same).)

Accordingly, for these and the other reasons set forth below, the Court should dismiss plaintiffs' Complaint as a matter of law under Rule 12(b)(6).

**FACTUAL BACKGROUND**

**A.    PLAINTIFFS ALLEGE BAPTIST HEALTH VIOLATED THEIR PRIVACY RIGHTS BY EMBEDDING DIGITAL ANALYTIC TOOLS ON ITS PUBLIC WEBSITE.**

This is an alleged website privacy case. The four named plaintiffs—proceeding under the initials R.B., S.C., J.S., and J.F.—allege that Baptist Health owns and manages a website, https://www.baptisthealth.com, which they refer to as the "Website" in their Complaint. (Dkt. # 1, *Compl.* ¶ 3.) Plaintiffs allege they are each Baptist Health patients or former patients who visited the Website in connection with their care. (*Id.*, ¶¶ 114, 116, 121 (R.B.); *id.*, ¶¶ 130, 132, 137 (S.C.); *id.*, ¶¶ 146, 148, 153 (J.S.); *id.*, ¶¶ 162, 164, 169 (J.F.).) And plaintiffs allege that when they visited the Website, Baptist Health, through alleged "tracking technologies" embedded on the Website, inappropriately transmitted data regarding their usage of the Website to three third-parties: Google, Microsoft, and Adobe. (*Id.*, ¶ 1; ¶¶ 52-63 (Google); ¶¶ 64-75 (Microsoft); ¶¶ 76-85 (Adobe).)

This information alleged to have been shared is not medical information in the traditional sense. Plaintiffs instead focus their allegations on three basic pieces of information Baptist Health allegedly sent to these third parties as they maneuvered through the Website:

(1) the webpage "URLs" they clicked on, *e.g.,* https://www.baptisthealth.com/providers (*id.*, ¶ 27 (*Figure one*)), or https://www.baptisthealth.com/providers/results?age_groups_seen=Older%20Adult%20%3E65|Infant%200-2&gender=Male&keyword=Neurosurgery&keywordType=specialties&languages=English&location=Illinois%2C520USA&page=1&provider_type=Physician (*id.*, ¶ 91 (*Figure ten*).)

(2) their Internet protocol (IP) address, which plaintiffs allege is "a persistent identifier that can be and is linked to an individual or household" (*id.*, ¶ 99); *see also Doe II v. MedStar Health, Inc.*, 2026 WL 709810, at *5 (Md. Ct. App. Mar. 13, 2026) ("An 'IP address' is the abbreviation

for Internet Protocol address, which is 'a unique number which identifies a computer and its location on the Internet; a logical address assigned to every workstation, server, printer, and router on a connected network.'") (quoting *IP address*, Oxford Reference, https://www.oxfordreference.com/display/10.1093/oi/authority.20110803100010535#:~:text='IP%20address'%20can%20also%20refer,IP%20address'%20in%20Oxford%20Reference%20%c2%BB (last visited Jan. 27, 2026)); *and*

(3) internet "cookies" for these third-parties—including Google's "IDE" and "DSID" cookies (*id.*, ¶¶ 58-63); Microsoft's "MUID" cookie (*id.*, ¶¶ 64, 71-75); and Adobe's "ECID" cookie (*id.*, ¶¶ 79-85)—which plaintiffs allege are "small text file[s] that can be used to store information on the client device," and "which can later be communicated to a server or servers," and "are sent with HTTP requests from client devices to the host server" (*id.*, ¶ 23).

### B. PLAINTIFFS ALLEGE THE CLAIMED DISCLOSURES VIOLATED THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT OF 1996.

The overarching theme of plaintiffs' Complaint is their repeated allegation that through these alleged third-party disclosures Baptist Health also allegedly violated the Health Insurance Portability and Accountability Act of 1996 (HIPAA). (Dkt. # 1, *Compl.* ¶¶ 35, 44, 47, 109, 112, 178, 226.)

Plaintiffs cite a regulatory guidance first issued by the Department of Health & Human Services in December 2022 to support this allegation. (*Id.*, ¶¶ 38-42 & n.12, 44, 109-112.) This guidance has since been invalidated by the Northern District of Texas, however, *see American Hospital Association v. Becerra*, 738 F. Supp. 3d 780, 807 (N.D. Tex. 2024) (Pittman, J.), and has never been re-issued, *see* https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html.

In its decision, the Northern District of Texas struck the guidance based on its holding that an IP address and a webpage URL (referred to as the "Proscribed Combination" in the opinion), are *not* "individually identifiable health information" under the statute. The court held: "the closest the Proscribed Combination gets to [individually identifiable health information] is a speculative inference extrapolated from (but unsubstantiated by) collected metadata." 738 F. Supp. 3d at 804. And: "Because the Proscribed Combination facially exceeds HIPAA's unambiguous text, the Court need not consider the Parties' other APA arguments." *Id.*

C.    **PLAINTIFFS ALLEGE BAPTIST HEALTH MADE THE CLAIMED DISCLOSURES FOR ADVERTISING PURPOSES.**

All of this is background for the primary question before the Court. There is one basic consistency throughout plaintiffs' Complaint: plaintiffs' allegations regarding the *purpose* for which Baptist Health allegedly made these disclosures. This purpose was to engage in speech on the Internet and to analyze the effectiveness of that speech. As plaintiffs allege: "the primary motivation and a determining factor in Defendant's interception and disclosure of Plaintiffs' and Class Members' Private Information was to commit criminal and tortious acts in violation of federal and state laws, namely, *the use of patient data for advertising in the absence of express written consent for its own financial gain.*" (Dkt. # 1, Compl. ¶ 178 (emphasis added).)

Plaintiffs repeat this same allegation throughout their complaint in a myriad of ways:

- "In exchange for disclosing the Private Information of its patients, Defendant is compensated, upon information and belief, by the Unauthorized Parties in the form of enhanced advertising services and more cost-effective marketing on its platform." (*Id.*)

- "*The Tracking Tools are used to gather, identify, target, and market products and services to Defendant's patients.*" (*Id.*, ¶ 32 (emphasis added).)

4

- "By utilizing the Tracking Tools, the cost of advertising and retargeting was reduced through further use of the unlawfully intercepted and disclosed Private Information, thereby benefitting Defendant while invading the privacy of Plaintiffs and violating their rights under federal and Kentucky law." (*Id.*, ¶ 181.)

- "Defendant failed to protect Plaintiffs' and Class Members' Private Information and acted knowingly when it installed the Tracking Tools onto its Website because the purpose of the Tracking Tools is to disseminate patient's communications with the Website for marketing and advertising as opposed to legitimate medical purposes." (*Id.*, ¶ 248.)

And, as the only evidence of their claimed harm, plaintiffs allege that, after using Baptist Health's website, they each saw medical advertisements related to the alleged conditions they searched for. (*Id.*, ¶¶ 121, 137, 153, 169.) Plaintiffs claim "[t]he presence of these advertisements confirms Defendant's unlawful transmission of Plaintiff[s]' Private Information to Unauthorized Parties." (*Id.*)

## LAW AND ARGUMENT

### I.     STANDARD OF REVIEW.

"Even at the pleadings stage, of course, a complaint must do more than just check the boxes for the elements necessary for a claim to proceed." *In re E.I. du Pont de Nemours & Co. C-8 Personal Injury Litig.*, 87 F.4th 315, 320 (6th Cir. 2023) (Kethledge, J.). "Instead, Civil Rule 8(a)(2) requires a plaintiff to allege facts 'providing not only fair notice of the nature of the claim, but also grounds on which the claim rests.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007)).

"And the complaint's factual allegations, taken as true, 'must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555. "That means the complaint must allege facts supporting an inference that the defendant's liability is plausible, rather than just possible." *Id.*; *see also Forman v. TriHealth, Inc.*, 40 F.4th 443, 448 (6th Cir. 2022) (same; citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## II.    THE COURT SHOULD DISMISS PLAINTIFFS' FEDERAL WIRETAP ACT CLAIM UNDER THE ONE-PARTY CONSENT RULE.

Plaintiffs' first and only federal claim is for an alleged violation of the federal Wiretap Act, 18 U.S.C. § 2510, *et seq.* (Dkt. # 1, *Compl.* ¶¶ 209-227.) The basis for this claim is that "[b]y utilizing and embedding Tracking Tools on its Website, Defendant intentionally intercepted, endeavored to intercept, and procured another person to intercept, the electronic communications of Plaintiffs and Class Members, in violation of 18 U.S.C. § 2511(1)(a)." (*Id.*, ¶ 218.) This claim should be dismissed for the reasons set forth in this section of our brief.

### A.    CONGRESS ADOPTS A BROAD ONE-PARTY CONSENT RULE FOR FEDERAL LAW SUBJECT TO A CRIME-TORT EXCEPTION.

"In Title III, Congress enacted a comprehensive scheme for the regulation of wiretapping and electronic surveillance." *Gelbard v. United States*, 408 U.S. 41, 46 (1972). As initially enacted in 1968, the statute did not apply to electronic communications. *Id.* Congress subsequently amended the statute in 1986, through the Electronic Communications Privacy Act (ECPA), to also place electronic communications within the statute's scope. *See generally In re Zynga Privacy Litig.*, 750 F.3d 1098, 1103 (9th Cir. 2014) (analyzing ECPA legislative history).

To this day, now nearly sixty years later, the entirety of the federal Wiretap Act statute remains hinged on the concept of "interception." *See* 18 U.S.C. § 2511(1)(a); *Bartnicki v. Vopper*, 532 U.S. 514, 526 (2001) ("the communications at issue are singled out by virtue of the fact that they were illegally intercepted—by virtue of the source, rather than the subject matter").

6

And, on this key interception point, the statute as initially proposed adopted a pure one-party consent rule: it would never be illegal under the statute for a party to intercept their own communication. *See* S. Rep. 90-1097, 90th Cong., 2nd Sess., 1968 U.S.C.C.A.N. 2112, *2182 ("Paragraph 2(c) provides that it shall not be unlawful for a party to any wire or oral communication or a person[] given prior authority by a party to a communication to intercept such communication.").

Senator Philip Hart from Michigan objected to this broad exemption, but solely on one limited ground: "it is totally permissive with respect to surreptitious monitoring of a conversation by a party to the conversation, *even though the monitoring may be for insidious purposes such as blackmail, stealing business secrets, or other criminal or tortious acts in violation of Federal or State laws.*" *Id.* at *2236 (emphasis added).

Senator Hart thus offered an amendment to the statute, which he explained as follows: "In other words, whenever a private person acts in such situations *with an unlawful motive*, he will violate the criminal provisions of title III and will also be subject to a civil suit." Cong. Rec. – Senate, 114 Cong. Rec. 14682, 14694 (May 23, 1968) (emphasis added).

This amendment was adopted into law, and as it presently stands the one-party consent rule provides in full:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception *unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.*

18 U.S.C. § 2511(2)(d) (emphasis added); *compare* 18 U.S.C. § 2511(2)(c) (providing blanket one-party consent rule for persons acting under color of law).

**B.**    **THE SIXTH CIRCUIT HOLDS THAT WHAT MATTERS FOR THE EXCEPTION IS THE DEFENDANT'S "*SPECIFIC UNLAWFUL INTENT* IN MAKING *THESE TAPES*."**

There is no question Baptist Health was a party to the communications at issue: each plaintiff affirmatively alleges they used the Website "to communicate Private Information *to Defendant*" on "numerous occasions." (Dkt. # 1, *Compl.* ¶¶ 116, 132, 148, 164 (emphasis added).) Under the one-party consent rule, the question before the Court is thus this: have plaintiffs plausibly alleged facts to show that the tortious or criminal conduct exception to the one-party consent rule applies, or, in the alternative, have plaintiffs pleaded themselves out of court through their repeated "purpose to engage in digital advertising" allegations?

The Court is not writing on a blank slate in analyzing the exception. The Sixth Circuit has twice interpreted the exception in cases that provide guidance here. *First*, in *United States v. Underhill*, 813 F.2d 105, 108, 110-11 (6th Cir. 1987) (Lively, C.J.), the Court addressed the admissibility at trial of recordings made by participants in illegal gambling operation, where the recordings were made in furtherance of that illegal gambling conspiracy. *Id.* at 108. As the court stated: "the purpose of the tapes was to record the bets as made, in order to prevent disagreements with bettors over the amount of the wagers." *Id.*

The criminal defendants themselves, who had made the tapes yet were still hoping they would not be used against them at trial, took the position that their own recordings should have been inadmissible at their own trial because their own purpose for making them—to further their illegal gambling scheme—was unlawful. *Id.* at 108. The Sixth Circuit agreed with the defendants on this first point, *see id.* at 110-11, but not on the ultimate admissibility of the tapes at trial, *id.* at 112 (holding that, "[a]s a member of the conspiracy Person was bound by the acts of his co-conspirators and may be held to have waived his right of privacy in communications made in furtherance of the purposes of the conspiracy").

8

In the course of reaching these results, the Court stated as follows regarding the scope of the exception: "It is settled that the legality of an interception is determined by the purpose for which the interception is made, *not by the subject of the communications intercepted*." *Id.* at 810 (emphasis added). "Thus, the fact that the parties to the intercepted conversations discussed illegal gambling does not affect the legality of the interception." *Id.*

*Second*, in *Traficant v. C.I.R.*, 884 F.2d 258 (6th Cir. 1989), the Court again dealt with the one-party consent rule in the context of the admissibility of certain recordings as evidence; here, in a penalty trial before the Tax Court. 884 F.2d at 261, 266. The *Traficant* facts can be succinctly synopsized: two competing factions of an organized crime consortium, La Cosa Nostra, one from Cleveland and one from Pittsburgh, were both bribing the same politician, the defendant Traficant. *Id.* at 261. The Cleveland bribers, led by Charles Carabbia, became worried that Traficant was going to favor the Pittsburgh bribers over them, and thus recorded two of their own conversations with Traficant and some of his campaign aides in order to assuage their concerns. *Id.*

The recordings were admitted into evidence at the Tax Court proceeding, and Traficant objected on appeal. The Sixth Circuit affirmed, holding as follows: "A party attempting to suppress a recording bears the burden of proving it was made for an impermissible purpose." *Id.* at 266. "The Tax Court held a lengthy hearing on Traficant's Wiretap Act claim and concluded that he had failed to carry his burden." *Id.* To the contrary: "It noted that general character evidence of Charles Carabbia's 'penchant for violence and intimidation' was not probative of the point in issue: Carabbia's *specific unlawful intent* in making *these tapes*." *Id.* (emphasis in original). "The Court further found that Traficant had adduced no evidence that the tapes had ever been used in any unlawful scheme, or that nay threat had been made to use them." *Id.* The Court saw "no reason to hold these findings clearly erroneous." *Id.*

9

## C.    THE FEDERAL WIRETAP ACT IS A FELONY CRIMINAL STATUTE AND A *MENS REA* REQUIREMENT IS AN ESSENTIAL COMPONENT OF OUR CRIMINAL LAW.

The *Traficant* Court's holding—that what matters for the exception analysis is the defendant's "*specific unlawful intent* in making *these tapes*"—is the correct result under basic principles of statutory interpretation. Under Supreme Court precedent, "[i]t is a fundamental rule of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Doe v. Chao*, 540 U.S. 614, 630 (2004) (quoting *Davis. v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989)).

The relevant context here, to begin, is that the federal Wiretap Act is a felony criminal statute: "whoever violates subsection (1) of this section shall be fined under this title or *imprisoned not more than five years*, or both." 18 U.S.C. § 2511(4)(a) (emphasis added); *see also* DEP'T OF JUSTICE, Criminal Resource Manual, CRM 1000-1499 ("The basic penalty provision for the intentional interception of a wire, oral, or electronic communication is five years imprisonment and a fine under Title 18, United States Code.").

And, as the Supreme Court has held: "Federal criminal liability generally does not turn solely on the results of an act without considering the defendant's mental state." *Elonis v. United States*, 575 U.S. 723, 740 (2015); *Ruan v. United States*, 597 U.S. 450, 457 (2022) ("as a general matter, our criminal law seeks to punish the 'vicious will'") (quoting *Morissette v. United States*, 342 U.S. 246, 251 (1952) (Jackson, J.)).[1]

---

[1] These same principles apply even though this case is before the Court in a civil context. *Leocal v. Ashcroft*, 534 U.S. 1, 11 n. 8 (2004) (where a statute has both civil and criminal applications, "we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context"); *LVRC Holdings, LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009) (same for interpreting Computer Fraud and Abuse Act, enacted contemporaneously with the ECPA; "Although this case arises in a civil context, our interpretation of §§ 1030(a)(2) and (4) is equally applicable in the criminal context.").

To the contrary: "Crime, as a compound concept, generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand, was congenial to an intense individualism and took deep and early root in American soil." *Morissette*, 342 U.S. at 251-52; *United States v. Bailey*, 444 U.S. 394, 402 (1980) (same).

Thus also: "courts of various jurisdictions, and for the purposes of different offenses, have devised working formulae, if not scientific ones, for the instruction of juries around such terms as 'felonious intent,' 'criminal intent,' 'malice aforethought,' 'guilty knowledge,' 'fraudulent intent,' 'wilfulness,' 'scienter,' to denote guilty knowledge, or 'mens rea,' to signify an evil purpose or mental culpability." *Morissette*, 342 U.S. at 252.

### D. THE USE OF THE LANGUAGE "FOR THE PURPOSE OF" SETS FORTH THE ONE-PARTY CONSENT RULE'S INDEPENDENT *MENS REA* REQUIREMENT.

The use of the phrase "for the purpose of" is one of these linguistic formulations—the language shows a "specific intent" crime, as both federal and state courts interpreting this same language have repeatedly held. *See Tilton v. Playboy Entm't Grp., Inc.*, 554 F.3d 1371, 1377 (11th Cir. 2009) (interpreting 18 U.S.C. § 2251(a); "*for the purpose* of producing any visual depiction of such conduct") (emphasis in original); *United States v. Fortier*, 956 F.3d 563, 566-67 (8th Cir. 2020) (same); *State v. Wilson*, 830 N.W.2d 849, 853-54 (Minn. 2013) (Minn. Stat. § 609.487, subd. 6 ("*for the purpose* of avoiding arrest, detention, or investigation, or in order to conceal or destroy potential evidence related to the commission of a crime") (emphasis in original); *People v. Davis*, --- N.E.3d ----, 2026 IL App (3d) 250122, ¶ 18 (720 ILCS 5/17-0.5; "*for the purpose of causing financial loss to another or bringing some financial gain to oneself*") (emphasis in original); Wayne R. LaFave & Jens David Ohlin, Criminal Law § 5.1(a), pg. 312 (7th Ed. 2023) ("[m]any statutes defining conduct which is criminal employ words (usually adverbs) or phrases indicating some type of bad-mind requirement: 'intentionally' or 'with intent to . . .'; 'knowingly' or 'with

11

knowledge that . . .'; '*purposely*' or '*for the purpose of*'") (emphasis added)); *compare Kidd v. Thomson Reuters Corp.*, 925 F.3d 99, 106 (2d Cir. 2019) ("*for the purpose of furnishing consumer reports*" in 15 U.S.C. § 1681a(f) of Fair Credit Reporting Act; "As explained above, the long-standing meaning of 'for the purpose,' which we presume Congress understood when it drafted the FCRA, requires specific intent to provide a statutorily-defined 'consumer report.'").

And, as the Sixth Circuit has held, "[t]o commit a specific-intent crime, a defendant must 'do more than knowingly act in violation of the law.'" *United States v. Ramamoorthy*, 949 F.3d 955, 961 (6th Cir. 2020) (quoting *United States v. Gonyea*, 140 F.3d 649, 653 (6th Cir. 1998)). "He 'must also act with the purpose of violating the law.'" *Id.*

"In other words, 'a general intent crime requires the knowing commission of an act that the law makes a crime. A specific intent crime requires additional bad purpose.'" *Id.* (quoting *United States v. Kimes*, 246 F.3d 800, 806-07 (6th Cir. 2001)); *see also* Model Penal Code § 2.02(2)(a) ("A person acts purposely with respect to a material element of an offense when: (i) if the element involves the nature of his conduct or a result thereof, *it is his conscious object to engage in conduct of that nature or to cause such a result*") (emphasis added); Wayne R. LaFave & Jens David Ohlin, CRIMINAL LAW, § 5.2(e) pg. 330 (7th Ed. 2023) ("the most common usage of 'specific intent' is to designate a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime") (emphasis in original).

What all of this shows is why the *Traficant* court's test for applying the exception— "*specific unlawful intent* for making *these tapes*"—is correct. Under the federal Wiretap Act a person does nothing wrong—"[*i*]*t shall not be unlawful under this chapter*"—if they record their own conversation. 18 U.S.C. § 2511(2)(d). This act may violate some other law, but it does not implicate the federal statute because of the statute's one-party consent rule. *Id.* This is so, at least,

12

unless the person is making the recording "*for the purpose of* committing any criminal or tortious act." *Id.* (emphasis added).

Thus, for parties to the conversation, the statutory inclusion of the phrase "for the purpose of" establishes the one-party consent rule's own independent *mens rea* requirement. A party to a conversation is not a criminal felon, subject to five years imprisonment, simply for recording their own conversation for a non-criminal, non-tortious purpose, irrespective of whether or not that recording might turn out to violate some other law. *Cf. In re High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d 621, 624 (7th Cir. 2000) ("Some states prohibit a person from recording his telephonic or other conversations without the other person's consent, but Title III does not, unless the person is both not acting under color of state law and has a criminal or tortious purpose.").

**E.     ADVERTISING IS A NON-CRIMINAL, NON-TORTIOUS PURPOSE.**

Under all of this precedent plaintiffs' federal Wiretap Act claim here fails because Baptist Health had no such criminal intent here as evidenced by plaintiffs' own well-pleaded factual allegations. As laid out above, plaintiffs contend that Baptist Health's alleged purpose for making the recordings are plain: to engage in advertising on the Internet, and to analyze the effectiveness of how those advertisements performed. (Dkt. # 1, *Compl.* ¶¶ 32, 178, 181, 248.)

This is a non-criminal, non-tortious purpose—as the Supreme Court has repeatedly held: "Advertising, however tasteless and excessive it sometimes may seem, is nonetheless dissemination of information as to who is producing and selling what product, for what reason, and at what price." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 765 (1976). "So long as we preserve a predominantly free enterprise economy, the allocation of resources in large measure will be made through numerous private economic decisions." *Id.* "It is a matter of public interest that those decisions, in the aggregate, be intelligent and well informed." *Id.* "To this end, the free flow of commercial information is indispensable." *Id.*

13

The Court has further noted "[t]he listener's interest is substantial: the consumer's concern for the free flow of commercial speech often may be far keener than his concern for urgent political dialogue." *Bates v. State Bar of Az.*, 433 U.S. 350, 364 (1977). "Moreover, significant societal interests are served by such speech." *Id.* "Advertising, though entirely commercial, may often carry information of import to significant issues of the day." *Id.* "And commercial speech serves to inform the public of the availability, nature, and prices of products and services, and thus performs an indispensable role in the allocation of resources in a free enterprise system." *Id.*

This is particularly true in the Internet context. "Not even thirty years ago, this Court felt the need to explain to the opinion-reading public that the 'Internet is an international network of interconnected computers.'" *Moody v. NetChoice, LLC*, 603 U.S. 707, 713 (2024) (quoting *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 850 (1997)). "Things have changed since then." *Id.* "At the time, only 40 million people used the internet." *Id.* "Today, Facebook and YouTube alone have over two billion users each." *Id.*; *see also Packingham v. North Carolina*, 582 U.S. 98, 100 (2017) ("While in the past there may have been difficulty in identifying the most important places (in a spatial sense) for the exchange of views, today the answer is clear. It is cyberspace—the 'vast democratic forums of the Internet' in general, and social media in particular.") (quoting *Reno*, 521 U.S. at 868 (1997)).

Thus, even assuming there was an alleged disclosure of "individually identifiable health information" at stake through this case, Baptist Health's purpose for this alleged disclosure was not nefarious, nor made with any "*specific unlawful intent* in making *these tapes*." *Traficant*, 884 F.2d at 266 (emphasis in original). To the contrary, as plaintiffs' repeated allegations make plain, this purpose was merely to engage in marketing, by sending them information regarding Baptist Health's services. (Dkt. # 1, *Compl.* ¶¶ 121, 137, 153, 169.)

14

This *purpose* is not criminal, and this *purpose* is not tortious, even assuming Baptist Health's *actions* in disclosing this information might ultimately turn out to violate some other law. *Compare Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1353-54 (7th Cir. 1995) (refusing to apply the exception where the defendant's alleged purpose in making the recordings was lawful, even though "[m]aybe the program as it was eventually broadcast was tortious, for we have said that the defamation count was dismissed prematurely").

### F.    THE DECISIONS HOLDING THAT A HIPAA VIOLATION EQUALS A WIRETAP ACT VIOLATION ARE WRONG.

We acknowledge there are certain district courts that have disagreed with the above analysis and holdings in the context of HIPAA, which makes disclosures of protected health information a crime, and provides for enhanced criminal penalties where such disclosures are made for "commercial advantage." *See* 42 § 1320d-6(a)(3), (b)(3); *Kurowski v. Rush System for Health*, 2023 WL 8544084, at *2-3 (N.D. Ill. Dec. 11, 2023) (creating a "HIPAA exception-to-the-party-exception" based on alleged violation of 42 U.S.C. § 1320d-6); *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 382-83 (S.D.N.Y. 2024) (same).)

These decisions are wrong. As set forth above, the crime-tort exception sets out its own independent *mens rea* requirement for the Wiretap Act statute to apply in the first instance: the defendant must have a purpose in mind, at the time of the recording, to commit any criminal or tortious act. 18 U.S.C. § 2511(2)(d). The exception's text does not turn merely on the presence of a mental state that some other law (taken independently) deems tortious or criminal. It requires "the *purpose* of *committing*" a "criminal or tortious act." *Id.* (emphasis added). Where that act is alleged to be a HIPAA violation, this text requires plausible allegations of a purpose to violate HIPAA itself. Indeed, because much of tort law turns merely on the presence of negligence, reading the *mens rea* standard of underlying law into the crime-tort exception without modification

would negate the phrase "*for the purpose of* committing" in the ordinary case—plaintiffs could always allege that in hindsight there was some piece of defendant's alleged misconduct that was also a "breach of confidence," as they have done here. (Dkt. # 1, *Compl.* ¶ 231.)

But a purposeful *mens rea* is not grounded in a violation of the law—it is about what is in the defendant's mind—his or her "conscious desire." *Counterman v. Colorado*, 600 U.S. 66, 78-79 (2023) ("Purpose is the most culpable level in the standard mental-state hierarchy, and the hardest to prove. A person acts purposefully when he 'consciously desires' a result—so here, when he wants his words to be received as threats.") (quoting *Bailey*, 444 U.S. at 404); *compare Tilton*, 554 F.3d 1371 ("Tilton's theory confuses 'purpose' with 'knowledge,' which appears elsewhere in the statute and refers to a person's understanding that a particular result is substantially certain to occur, whatever his desire concerning that result.") (quotation omitted).

As the Second Circuit has likewise held: "Congress chose the word 'purpose' for a reason. Therefore the offender must have his or her objective a tortious or criminal result." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010); *see also Martinez v. Mentavi*, 2025 WL 3780427, at *3-5 (W.D. Mich. Oct. 9, 2025) (rejecting argument that alleged violations of HIPAA or other state laws could support application of the crime-tort exception in healthcare provider case; "these allegations simply state that Defendant intercepted the communication to promote its own business and in doing so violated HIPAA and state tort law. But as the Second Circuit concluded in *Caro*, the crime-tort exception depends on purpose, not alleged results."); *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013) (exception is "confined to instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party").

16

Thus, even assuming at this stage of the case there was an alleged disclosure of "individually identifiable health information" at stake under 42 U.S.C. § 1320d-6, plaintiffs' well-pled factual allegations do not allege Baptist Health had any "vicious will" in mind when Baptist Health allegedly made these interceptions. *Ruan*, 597 U.S. at 457. To the contrary, at their worst, this purpose was simply to engage in digital marketing on the Internet, and to analyze the effectiveness of this speech. As plaintiffs put it, even at their worst: *"The Tracking Tools are used to gather, identify, target, and market products and services to Defendant's patients."* (Dkt. # 1, *Compl.* ¶ 32 (emphasis added); *id.*, ¶¶ 178, 181 (same).)

For all of these reasons, the Court should hold plaintiffs' repeated purpose to engage in advertising allegations have pleaded themselves out of court, at least for purposes of their federal statutory claim under the federal Wiretap Act. *LaFleur v. Yardi Sys., Inc.*, 168 F.4th 410, 415 (6th Cir. 2026) (holding plaintiffs pleaded themselves out of court on Ohio right-of-publicity claim requiring commercial value as an element by alleging "they're ordinary people whose names' alleged value stems only from their combination with other information"); *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009) ("if a plaintiff 'pleads facts that show that his suit is time-barred or otherwise without merit, he has pleaded himself out of court'") (quoting *Tragenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993)).

## III. PLAINTIFFS ALSO FAIL TO STATE A CLAIM UNDER EITHER KENTUCKY OR ILLINOIS COMMON LAW.

Plaintiffs assert four additional claims in their complaint—for breach of confidence, invasion of privacy by intrusion upon seclusion, unjust enrichment, and breach of implied contract—under Kentucky state common law. (Dkt. # 1, *Compl.* ¶¶ 228-268.) These common law claims should each be dismissed for the reasons set forth in this section of our brief.

17

As an initial matter, however, it should be noted that there is one plaintiff—R.B.—who alleges she is a citizen of Illinois. (*Id.*, ¶ 12.) For purposes of this motion, Baptist Health will assume that Illinois law could also ultimately govern R.B.'s claims, as the result on these four claims is the same whether or not Illinois or Kentucky law is applied.

### A.   NEITHER KENTUCKY NOR ILLINOIS LAW RECOGNIZES PLAINTIFFS' CLAIM FOR ALLEGED BREACH OF CONFIDENCE.

For their breach of confidence claim, plaintiffs allege "[m]edical providers have a duty to their patients to keep non-public medical information completely confidential." (Dkt. # 1, *Compl.* ¶ 229.) From there, plaintiffs then claim that, "[c]ontrary to its duties as a medical provider and its express promises of confidentiality, Defendant installed Tracking Tools to disclose and transmit Plaintiffs' and Class Members' communications, including Private Information, to Unauthorized Parties." (*Id.*, ¶ 231.) This claim does not exist under either Kentucky or Illinois law, at least not for the type of alleged breach of physician-patient confidentiality at issue here.

To take Kentucky first: Under Kentucky law, breach of confidence is an allegation that can be used in equity to support a remedy, which is the imposition of a constructive trust. *See Kaplon v. Chase*, 690 S.W.2d 761, 763 (Ky. Ct. App. 1985); *Keeney v. Keeney*, 223 S.W.3d 843, 849 (Ky. Ct. App. 2012) ("When legal title to property has been acquired or held under such circumstances that the holder of that legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee."). And "a constructive trust is only imposed upon identifiable property that can 'serve as the res upon which a trust can be imposed and possession of that res or its product by the person who is to be charged as the constructive trustee.'" *Sharber v. Sharber*, 2013 WL 3013583, at *6 (Ky. Ct. App. June 14, 2013) (quoting 76 Am.Jur.2d *Trusts* § 175 (2013)).

For these reasons, both the Eastern District and Western District have held the cause of action does not exist as a common law claim under Kentucky law. *Viviali v. One Point HR Sols.*,

*LLC*, 2025 WL 1158740, at *7 (E.D. Ky. Apr. 21, 2025) ("One Point is correct that no common law cause of action for 'breach of confidence' exists in Kentucky in the context of a data breach."); *Stinson v. Yum! Brands, Inc.*, 2025 WL 2755879, at *22 (W.D. Ky. Aug. 29, 2025) (same).

For Illinois: Illinois common law simply does not recognize a common law claim for an alleged breach of physician-patient confidentiality, as federal courts analyzing have Illinois law—including the Seventh Circuit—have held. *See Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020) ("declin[ing] the invitation" to recognize tort claim for alleged breach of physician-patient confidentiality under Illinois law), *judgment aff'd as modified*, 73 F.4th 502, 516 n.4 (7th Cir. 2023) ("we see no reason to disturb the judge's decision not to recognize a novel claim for breach of medical confidentiality"); *Kurowski v. Rush System for Health*, 683 F. Supp. 3d 836, 845 (N.D. Ill. 2023) (same; "the Court adopts the same logic that both the Seventh Circuit and Judge Pallmeyer applied to this novel issue of state law").

### B. PLAINTIFFS' ALLEGED INVASION OF PRIVACY HARM IS GROUNDED IN A CLAIMED DISCLOSURE, NOT AN INTRUSION.

The basis for plaintiffs' invasion of privacy by intrusion upon seclusion claim is that Baptist Health allegedly invaded their privacy by disclosing their private communications with third parties. "The Private Information of Plaintiffs and Class Members consist of private and confidential facts and information that were never intended *to be shared* beyond private communications." (Dkt. # 1, *Compl.* ¶ 240 (emphasis added).)

Unlike with breach of confidence, both Kentucky and Illinois law do recognize a claim for intrusion upon seclusion. *See Lawlor v. N. Am. Corp. of Ill.*, 2012 IL 112530, ¶ 34 & n.4, 983 N.E.2d 414 (2012) ("One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person.") (quoting

19

Restatement (Second) of Torts § 652B (1977)); *McCall v. Courier-Journal and Louisville Times Co.*, 623 S.W.2d 882, 887 (Ky. 1982); *Pearce v. Whitenack*, 440 S.W.2d 392, 400-01 (Ky. Ct. App. 2014) (same).

The problem here is that the claim does not apply where—as in this case—plaintiffs' alleged privacy harm is grounded in a claimed *disclosure*, not an *intrusion*. As the Illinois Supreme Court explained in *Lovgren v. Citizens First Nat. Bank of Princeton*, 126 Ill.2d 411, 534 N.E.2d 987 (1989): "*The basis of the tort is not publication or publicity.*" *Id.* at 416-17 (emphasis added). "Rather, the core of the tort is the offensive prying into the private domain of another." *Id.*

This same general principle for the claim is set forth in the Restatement as well. As explained there: "The form of invasion of privacy covered by this Section does not depend upon any publicity given to the person whose interest is invaded or to his affairs. It consists solely of an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable person." RESTATEMENT (SECOND) OF TORTS § 652B, *Intrusion upon Seclusion*, cmt. a.

Thus also, every court to address the question in these website privacy cases has squarely held this is not a claim for intrusion upon seclusion under Illinois law, in analysis that applies equally under Kentucky law as well. *See Kurowski v. Rush System for Health*, 659 F. Supp. 3d 931, 943-44 (N.D. Ill. 2023) (dismissing same alleged intrusion upon seclusion claim because "the harm for which Rush is responsible, if any, is its disclosure of patient data (which, as alleged, is not protected health information)—not the obtaining of that data."); *Kurowski v. Rush System for Health*, 683 F. Supp. 3d 836, 849 (N.D. Ill. 2024) (same; "Rush cannot plausibly considered to have intruded on, intercepted, or 'bugged' private communications that it was always the intended recipient of."); *Hartley v. University of Chicago Medical Center*, 2023 WL 7386060, at *2-3 (N.D.

20

Ill. Nov. 8, 2023) (same; "Since Plaintiff is complaining about what she thinks UCMC told Facebook, her complaints are with the publication, and not any intrusion, which she probably initiated. Count V is dismissed with prejudice.").

### C.    PLAINTIFFS DO NOT ALLEGE DETRIMENT OR EXPENSE FOR THEIR UNJUST ENRICHMENT CLAIM.

Plaintiffs' next common law claim is for alleged unjust enrichment. The basis for this claim is that "Plaintiffs' and Class Members' Private Information have economic value" (Dkt. # 1, *Compl.* ¶ 258), and "Defendant benefits from the use of Plaintiffs' and Class Members' Private Information and unjustly retained those benefits at their expense" (*id.*, ¶ 255). For this reason, plaintiffs claim "Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and Class Members all unlawful or inequitable proceeds that Defendant received, and such other relief as the Court may deem just and proper." (*Id.*, ¶ 261).

The issue with plaintiffs' claim here is that under either Kentucky or Illinois law for unjust enrichment they must allege a detriment or expense to themselves, personally. *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 777-78 (Ky. 2017) ("benefit conferred upon defendant *at plaintiff's expense*" as a basic element for an unjust enrichment claim under Kentucky law); *K-Stones, Inc. v. Ko*, 2025 IL App (2d) 230328, ¶ 59 (Ill. Ct. App. 2025) ("plaintiff must allege that the defendant has unjustly retained a benefit *to the plaintiff's detriment*") (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill.2d 145, 160 (1989)).

On this point, the lynchpin of plaintiffs' Complaint are their allegations that their internet browsing information theoretically has value to third-parties. (Dkt. # 1, *Compl.* ¶¶ 184-191.)  But plaintiffs do not make any factual allegations to show why, to the extent desired, they could not still capture the alleged value of this information, or how this information is now worth any less to them than it was before just because Baptist Health allegedly used tracking technologies on one

21

single website on the entirety of the World Wide Web. As the Southern District of New York held in even rejecting standing on this basis: "While we recognize that browsing information may possess value in the abstract, absent allegations suggesting that plaintiffs' ability to monetize their browsing information was diminished, this alleged harm remains too conjectural." *Mount v. PulsePoint, Inc.*, 2016 WL 5080131, at *6, 13 (S.D.N.Y. Aug. 17, 2016), *aff'd* 684 F. App'x 32, 36 (2d Cir. 2017) ("plaintiffs do not allege that PulsePoint's data collection practices actually deprived them of any opportunity to sell their own personalized information").

For this reason, again whether under Kentucky or Illinois law, plaintiffs' unjust enrichment claim fails to state a claim upon which relief can be granted and should be dismissed. *Vanhook Enter., Inc. v. Kay & Kay Contractng, LLC*, 543 S.W.3d 569, 573 (Ky. 2018) ("Restitution is not intended to return the value of the benefit conferred to the aggrieved party when the other party is unjustly enriched *at the expense of the aggrieved*.") (emphasis added); *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011) (Illinois law; "Unjust enrichment is not a mode of imposing punitive damages; it is a means of recovering something that the defendant is not entitled to but is unfairly possessing to the plaintiff's detriment."); *cf. Adair Cigna Corp. Servs., LLC*, 818 F. Supp. 3d 641, 664-65 (E.D. Pa. 2026) (dismissing unjust enrichment claim where "there are no factual allegations suggesting that the data is less valuable because of Defendants' or the third parties' use of it, let alone allegations indicating that Plaintiffs themselves intended to sell their information (which seems a highly unlikely proposition given their overarching privacy concerns)").

### D. PLAINTIFFS DO NOT ADEQUATELY ALLEGE THE BASIC ELEMENTS FOR FORMING A CONTRACT FOR THEIR IMPLIED CONTRACT CLAIM.

Plaintiffs' final claim is for alleged breach of implied contract. (Dkt. # 1, *Compl.* ¶¶ 262-268.) For this claim, plaintiffs conclusorily assert that, "[w]hen Plaintiffs and Class Members provided their Private Information to Defendant, they entered into implied contracts pursuant to

22

which Defendant agreed to safeguard and not disclose Plaintiffs' and the Class's Private Information without consent or authorization." (*Id.*, ¶ 265.)

But what exactly is this alleged contract, and how did it form? Under both Kentucky and Illinois law, an implied-in-fact contract is a "true contract," meaning that all of the basic contract formations requirements must be met, including a basic meeting of the minds. As the Kentucky Supreme Court has explained: "Basic contract law provides that, as in the case of an express contract, an implied contract requires the agreement of the promisor to be bound." *Furtula v. University of Kentucky*, 438 S.W.3d 303, 308 (Ky. 2014); *Perkins v. Daugherty*, 722 S.W.2d 907, 909 (Ky. Ct. App. 1987) (same); *Matthews v. Chicago Tran. Author.*, 2016 IL 117638, ¶ 93 (2016) ("A contract implied in fact is a 'true contract,' under which the parties set the terms and establish the bounds of their liability."); *Brody v. Finch Univ. of Health Sciences/The Chicago Med. School*, 698 N.E.2d 257, 265 (Ill. Ct. App. 1998) ("In Illinois, two types of implied contracts are recognized: those implied in fact and those implied in law. A contract implied in fact contains all of the elements of an express contract, as well as a meeting of the minds.").

Yet, nowhere in plaintiffs' Complaint do they describe the contract's terms, identify what the contract is, or explain how both they themselves and Baptist Health—whether through their conduct or otherwise—allegedly understood both the nature of this contract and its alleged terms. They do not allege one particular document or interaction that forms the basis for their implied contract count, what the offer was, or how they accepted it. Instead, without doing any of these things, plaintiffs merely assert that "Plaintiffs and Class Members would not have entrusted Defendant with their Private Information in the absence of an implied contract between them and Defendant obligating Defendant to not disclose Private Information without consent." (Dkt. # 1, *Compl.* ¶ 266.) And they do all this all the while trying to represent putative classes that not only

23

consist of Baptist Health patients, but any person residing anywhere in the country who happened to land on any page of www.baptisthealth.com and make a search or click a link. (*Id.*, ¶ 194 ("All individuals residing in the United States who used Defendant's Website and had their Private Information, search terms, or detailed webpage information intercepted by and disclosed to third parties through the use of Tracking Tools.").)

In essence, plaintiffs want the Court to give them a free pass, rather than actually state the actual elements for pleading an implied in fact contract claim. *See Furtula*, 438 S.W.3d at 308 ("A contract may be inferred wholly or partly from such conduct as justifies the promise in understanding that the promisor intended to make a promise. *To constitute such a contract there must, of course, be a mutual assent by the parties—a meeting of the minds—and also an intentional manifestation of assent*.") (emphasis in original); *compare Brody*, 698 N.E.2d at 265 ("The elements of a contract are an offer, *a strictly conforming acceptance to the offer*, and supporting consideration.") (emphasis added).

This is exactly the type of formulaic recitation of the elements pleading that *Twombly* and *Iqbal* were designed to both deter and prevent. *See Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Iqbal*, 556 U.S. at 678 (holding that, under *Twombly*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *Doe v. Baum*, 903 F.3d 575, 580-81 (6th Cir. 2018) (same; "Legal conclusions, 'formulaic recitations' of the claim's elements, and 'naked assertions' of liability are all insufficient.").

## CONCLUSION

The Court should dismiss plaintiffs' complaint with prejudice for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

Dated: June 5, 2026

Respectfully submitted,

/s/ *M. Scott McIntyre*

David Carney (*pro hac vice filed*)
**BAKER & HOSTETLER LLP**
127 Public Square, Suite 2000
Cleveland, OH 44114
Telephone: (216) 861-7634
Fax: (216) 696-0740
dcarney@bakerlaw.com

M. Scott McIntyre (KY Bar # 89913)
**BAKER & HOSTETLER LLP**
312 Walnut Street, Suite 3200
Cincinnati, OH 45202
Telephone: (513) 852-2622
Fax: (513) 479-9558
smcintyre@bakerlaw.com

*Attorneys for defendant Baptist Healthcare System, Inc.*

26

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that the foregoing was filed with the Court's electronic filing system which will notify all counsel of record.

*/s/ M. Scott McIntyre*
M. Scott McIntyre