**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF KENTUCKY**

| | |
|---|---|
| R.B., S.C., J.S., and J.F., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BAPTIST HEALTHCARE SYSTEM, INC.,<br><br>Defendant. | Case No. 3:26-cv-00295-CHB<br><br>The Honorable Claria H. Boom,<br>United States District Court Judge |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT BAPTIST HEALTHCARE SYSTEM, INC.'S RULE 12(b)(6) MOTION TO DISMISS AND INCORPORATED MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS


I. Introduction ..... 1

II. Statement of Facts ..... 1

III. Standard of Review ..... 2

IV. Argument and Authority ..... 3

A. Plaintiffs Plausibly Allege a Federal Wiretap Act Claim ..... 3

1. The Crime Tort Exception Applies. ..... 4

B. Plaintiffs Plausibly Allege Claims Under Kentucky and Illinois Common Law ..... 8

1. Plaintiffs Adequately Plead Intrusion ..... 10

2. Plaintiffs Plausibly Allege Unjust Enrichment, Including Enrichment at Their Expense ..... 12

3. Plaintiffs Plausibly Allege Breach of Implied Contract ..... 14

V. Conclusion ..... 18

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,

556 U.S. 662 (2009) .......... 2, 3, 14

*B.K. v. Desert Care Network*,

No. 2:23-cv-05021- SPG-PDx, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .......... 6

*Baltimore & O.R. Co. v. United States*,

261 U.S. 592 (1923) .......... 15

*Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 555 (2007) .......... 2, 14

*Biddle v. Warren Gen. Hosp.*,

1999-Ohio-115, 86 Ohio St. 3d 395, 715 N.E.2d 518 .......... 10

*Bowen v. Paxton Media Grp., LLC*,

No. 5:21-CV-00143-GNS, 2022 WL 4110319 (W.D. Ky. Sept. 8, 2022) .......... 8, 15

*Brown v. Google LLC*,

525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......... 4

*Burns v. Masterbrand Cabinets, Inc.*,

369 Ill. App. 3d 1006, 874 N.E.2d 72 (Ill. App. Ct. 2007) .......... 10

*Caro v. Weintraub*,

618 F.3d 94 (2d Cir. 2010) .......... 4

*Castillo v. CostCo Wholesale Corp.*,

No. 2:23-cv-01548, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) .......... 5

*Dorton v. Ashland Oil & Ref. Co.*,

303 Ky. 279, 197 S.W.2d 274 (1946) .......... 14

*Engler v. Arnold*,

862 F.3d 571 (6th Cir. 2017) .......................................................... 2

*Flores v. Aon Corporation*,

2023 IL App (1st) 230140 .......................................................... 16

*Furtula v. Univ. of Kentucky*,

438 S.W.3d 303 (Ky. 2014) .......................................................... 14

*Gay v. Garnet Health*,

No. 23-cv-06950 (NSR), 2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024) .......................................................... 5

*Geisberger v. Willuhn*,

72 Ill. App. 3d 435, 390 N.E.2d 945 (1979) .......................................................... 9

*Heavey v. Ehret*,

166 Ill. App. 3d 347 (1988) .......................................................... 16

*Horne v. Patton* (1973),

291 Ala. 701, 287 So.2d 824 .......................................................... 9

*HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*,

131 Ill.2d 145 (1989) .......................................................... 12

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,

806 F.3d 125 (3d Cir. 2015) .......................................................... 3, 4

*In re Group Health Plan Litig.*,

709 F. Supp. 3d 707 (D. Minn. 2023) .......................................................... 18

*In re Grp. Health Plan Litig.*,

709 F. Supp. 3d 707 (D. Minn. 2023) .......................................................... 5

*In re Meta Pixel Healthcare Litig.*,

647 F. Supp. 3d 778 (N.D. Cal. 2022) ........................................................................ 4, 6, 18

*In re Penn. Cent. Transp. Co.*,

831 F.2d 1221 (3d Cir. 1987) ........................................................................................ 15

*Israel's Adm'r v. Rice*,

295 Ky. 360, 174 S.W.2d 517 (1943)............................................................................ 14

*Jarrell v. Adena Health Sys.*,

No. 2:24-cv-00282, 2025 WL 81305 (S.D. Ohio Jan. 13, 2025)........................................... 5, 6

*Johnson v. K Mart Corp.*,

311 Ill. App. 3d 573 (2000)............................................................................................ 11

*Kane v. University of Rochester*,

No. 23-CV-6027-FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024)...................................... 5

*Kurowski v. Rush Sys. for Health*,

No. 22-C-5380, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) .................................................. 5

*Lawlor v. N. Am. Corp. of Ill.,*

2012 IL 112530, 983 N.E.2d 414 (2012) ......................................................................... 10

*Lipson v. University of Louisville*,

556 S.W.3d 18 (2018) ..................................................................................................... 13

*McCall v. Courier-Journal and Louisville Times Co.*,

623 S.W.2d 882 (Ky. 1982)............................................................................................. 10

*McKenzie v. Allconnect, Inc.*,

369 F. Supp. 3d 810 (E.D. Ky. 2019)............................................................................... 15

*Mekhail v. N. Mem'l Health Care*,
23CV00440KMMTNL, 2024 WL 1332260 (D. Minn. Mar. 28, 2024) .................................... 6

*Melvin v. Burling*,
141 Ill. App. 3d 786 (1986)........................................................................................ 10

*Norris v. Smart Document Sols., LLC*,
483 F. App'x 247 (6th Cir. 2012) ............................................................................... 10

*Olson v. Ferrara Candy Company*,
2025 IL App (1st) 241126 .......................................................................................... 16

*Pearce v. Whitenack*,
440 S.W.2d 392 (Ky. Ct. App. 2014) ......................................................................... 10

*Petrillo v. Syntex Lab'ys, Inc.*,
148 Ill. App. 3d 581, 499 N.E.2d 952 (1986) ............................................................ 10

*Stein v. Edward-Elmhurst Health*,
No. 23-CV-14515, 2025 WL 580556 (N.D. Ill. Feb. 21, 2025)........................................ 5, 6, 7

*Stinson v. Yum! Brands, Inc.*,
No. 3:23-cv-183-DJH-LLK, 2025 WL 2755879 (W.D. Ky. Aug. 29, 2025) ............................ 8

*Strong v. LifeStance Health Grp. Inc.*,
No. CV-23-00682-PHX-KML, 2025 WL 317552 (D. Ariz. Jan. 28, 2025) .............................. 5

*Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*,
540 S.W.3d 770 (2017) ............................................................................................. 13

*Sweat v. Houston Methodist Hosp.*,
No. H-24-775, 2024 WL 3070184 (S.D. Tex. June 20, 2024) .................................................. 5

*Traficant v. C.I.R.*,

884 F.2d 258 (6th Cir. 1989 .................................................................................................. 7

*Trapani Constr. Co. v. The Elliot Group, Inc.*,

2016 IL App (1st) 143734 ................................................................................................... 16

*U.S. v. Underhill*,

813 F.2d 105 (6th Cir.1987) ............................................................................................ 4, 7

*Viviali v. One Point HR Sols., LLC*,

No. CV 2:24-185-DCR, 2025 WL 1158740 (E.D. Ky. Apr. 21, 2025) ..................................... 8

**Statutes**

18 U.S.C. § 2511 ............................................................................................................ 3, 4

**Other Authorities**

Restatement (Second) of Contracts § 22 ................................................................................ 15

Restatement (Second) of Torts § 652B (1977) ........................................................................ 10

## I. INTRODUCTION

Plaintiffs R.B., S.C., J.S., and J.F. (collectively "Plaintiffs") submit this response in opposition to Defendant Baptist Healthcare System, Inc.'s ("Baptist" or "Defendant") motion to dismiss (Dkt. No. 21) ("Motion"), and state as follows.

## II. STATEMENT OF FACTS

Defendant provides medical services to patients across the United States, and owns and controls www.baptisthealth.com (the "Website") which allows and encourages Baptist patients to search for physicians and medical facilities, explore health services, pay for care, access their patient portal, make medical appointments, and perform other tasks related to medical care. (Dkt. No. 1, ¶¶ 1-3). Unbeknownst to visitors of Defendant's Website, including Defendant's patients, while using these online services, Baptist surreptitiously intercepts patients' communications using the Unauthorized Parties' code embedded on the Website ("Tracking Tools") and transmits their Private Information to Unauthorized Parties ***without their consent***. *Id.* ¶¶ 4, 48-51; *see also* ¶¶ 52-85 (describing how the Google, Microsoft, and Adobe Tracking Tools that Baptist employed on its Website obtain and share private information). This information includes but is not limited to: (i) the locations or facilities where visitors or patients are seeking treatment; (ii) the types of medical services or procedures visitors or patients are seeking; (iii) search queries entered by visitors or patients into the website's search bar; and (iv) patients' access to the patient portal. *Id.* ¶ 4; *see also* ¶¶ 86-103. In return, Defendant receives a monetary benefit from companies whose Tracking Tools Defendant employs on its Website, among other benefits. *Id.* ¶¶ 178-183. As a result of Defendant's conduct, Plaintiffs and Class Members have suffered numerous injuries, including: (i) invasion of privacy; (ii) loss of benefit of the bargain; (iii) diminution of value and loss of control of their Private Information; (iv) statutory damages; and (v) the continued and ongoing risk to their Private Information. *Id.* ¶ 5.

Plaintiffs are current patients of Baptist who paid for healthcare services and used Defendant's Website to perform other tasks related to medical care including searching for locations, doctors, and specialties, placing a call through Defendant's Website, booking appointments online. *Id.* ¶¶ 115, 117-121, 131, 133-137, 147, 149-153, 163, 165-168. Unbeknownst to Plaintiffs, Baptist was secretly intercepting and sharing Plaintiffs' Private Information[1] with entities like Google, Microsoft, and Adobe via the Tracking Tools installed on Defendant's Website. *Id.* ¶¶ 86-101, 122-127, 138-143, 154-159, 170-175. As a result, Plaintiffs have suffered (i) invasion of privacy, (ii) loss of the benefit of the bargain, (iii) diminution of value and loss of control of their Private Information, (iv) statutory damages, and (v) the continued and ongoing risk to their Private Information. *Id.* ¶ 5. Plaintiffs also began experiencing targeted medical ads related to the information they searched for and inputted on Defendant's Website. *Id.* ¶¶ 121, 137, 153, 169. Indeed, these Tracking Tools are intended to gather personal information to create and deliver highly personal and targeted ads. *Id.* ¶¶ 53-55, 58-60, 68, 179.

## III. STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), the Court "must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Engler v. Arnold*, 862 F.3d 571, 574-75 (6th Cir. 2017) (internal quotations omitted). To survive dismissal, the plaintiff must allege facts sufficient "to raise a right to relief above the speculative level" and "to state a claim to relief that

---

[1] Defendant's Website routinely provided patients' Private Information including patients' IP addresses, device IDs, persistent cookie identifiers, and/or user accounts or other information users input into Defendant's Website, like their home address, zip code, or phone number. This is precisely the type of information HIPAA requires healthcare providers to anonymize to protect patients' privacy. *Id.* ¶¶ 99, 124, 140, 156, 172.

is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 678. The Court does not consider whether the plaintiff will ultimately prevail, but rather whether the facts permit the Court to infer more than the mere possibility of misconduct. *Id*. at 679.

## IV. ARGUMENT AND AUTHORITY

### A. Plaintiffs Plausibly Allege a Federal Wiretap Act Claim

The Electronic Communications Protection Act, 18 U.S.C. § 2511 ("ECPA") makes it unlawful to "intentionally intercept[ ], endeavor[ ] to intercept, or procure[ ] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." *See* 18 U.S.C. § 2511(1)(a). A plaintiff must show that the defendant "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *See In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 135 (3d Cir. 2015). Defendant's Motion invokes an exception to the statute under the One-Party Consent Rule that:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception . . . .

18 U.S.C. § 2511(2)(d) (the "Party Exception Rule"). However, the statute provides an exception to the exception, making Defendant's actions alleged in the Complaint unlawful if:

> *such communication is intercepted for the purpose of committing any criminal or tortious **act** in violation of the Constitution or laws of the United States or of any State.*

*Id*. (the "Crime-Tort Exception") (emphasis added). Defendant spends much of its briefing providing background on the statute[2] and arguing incorrectly that the Party Exception Rule applies while the Crime-Tort Exception to the Party Exception Rule does not. For the following reasons, the Crime-Tort Exception applies and Defendant's motion to dismiss Plaintiffs' ECPA claim must be denied.

**1. The Crime Tort Exception Applies.**

The Party Exception does not apply if the communication is "intercepted for the purpose of committing a[] tortious or criminal ***act*** in violation of the Constitution or laws of the United States or of any State." *Id*. "To survive a motion to dismiss, a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording." *See Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010); *see also In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d at 145. Notably, "[t]he existence of a lawful purpose does not sanitize an interception that was also made for an illegitimate purpose." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 796 (N.D. Cal. 2022) ("*Meta Pixel I*"). A plaintiff need only "allege that either the primary motivation or a determining factor in [the defendant's] actions has been to injure plaintiffs tortiously." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021) (quotations & citation omitted).

Defendant's conduct falls squarely within the Crime-Tort Exception because it intended to violate various tort and criminal laws through the interception and then disclosure of Plaintiffs'

---

[2] *U.S. v. Underhill*, 813 F.2d 105, 110 (6th Cir.1987) ("The sponsor of the amendment, Senator Hart of Michigan, emphasized the defensive purpose of the amendment, to protect a nonconsenting party to an intercepted conversation . . . . The entire focus of Senator Hart's comments was on protecting an innocent party from injury or embarrassment. This is clear from his objections to § 2511(2)(c) as originally proposed as well as his comments on the substitute provision that he sponsored.").

communications, including HIPAA's criminal prohibitions against disclosing "individually identifiable health information" without authorization and Illinois' and Kentucky's laws prohibiting the same disclosures. (Dkt. No. 1, ¶¶ 1-4, 19, 28-30, 32-34, 44-51, 86-102, 106-108, 110-113). "Courts from coast to coast have recognized that a violation of HIPAA can give rise to the crime-tort exception under the ECPA." *Stein v. Edward-Elmhurst Health*, No. 23-CV-14515, 2025 WL 580556, at *5 (N.D. Ill. Feb. 21, 2025) (collecting cases); *see, e.g.*, *Jarrell v. Adena Health Sys.*, No. 2:24-cv-00282, 2025 WL 81305, at *7 (S.D. Ohio Jan. 13, 2025) ("The Court disagrees with [Defendant's] construction of the purpose requirement, and ultimately concludes that Plaintiff has alleged sufficient facts to meet her burden as to [Defendant's] intent."); *see also Kane v. University of Rochester*, No. 23-CV-6027-FPG, 2024 WL 1178340, at *7 (W.D.N.Y. Mar. 19, 2024) ("This Court likewise concludes that Plaintiffs can invoke the tort-crime exception. Plaintiffs have alleged that Defendant configured the Pixel to collect and disclose, among other things, that a specific user booked an appointment with a specific healthcare provider and the search terms that the user entered to find that provider . . . . They have further alleged that Defendant disclosed this information to enhance its marketing efforts."); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 719 (D. Minn. 2023); *Strong v. LifeStance Health Grp. Inc.*, No. CV-23-00682-PHX-KML, 2025 WL 317552, at *5 (D. Ariz. Jan. 28, 2025); *Castillo v. CostCo Wholesale Corp.*, No. 2:23-cv-01548, 2024 WL 4785136, at *7 (W.D. Wash. Nov. 14, 2024); *Gay v. Garnet Health*, No. 23-cv-06950 (NSR), 2024 WL 4203263, at *3–4 (S.D.N.Y. Sept. 16, 2024); *Sweat v. Houston Methodist Hosp.*, No. H-24-775, 2024 WL 3070184, at *4 (S.D. Tex. June 20, 2024); *Kurowski v. Rush Sys. for Health*, No. 22-C-5380, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*") (finding allegations "sufficient to invoke the HIPAA exception-to-the-party-exception . . . [and that the complaint] plausibly state[d] a claim for relief under the Wiretap

Act"); *Mekhail v. N. Mem'l Health Care*, 23CV00440KMMTNL, 2024 WL 1332260, at *5 (D. Minn. Mar. 28, 2024) (similar); *see also Meta Pixel I*, 647 F. Supp. 3d at 797 ("plaintiffs may be able to show that the crime-tort exception applies" based on allegations "that the use of patient data for advertising in the absence of express written consent is criminal and tortious"); *B.K. v. Desert Care Network*, No. 2:23-cv-05021- SPG-PDx, 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) (finding the crime-tort exception applicable based on plaintiffs' allegations that defendant intercepted communications regarding "requests to refill prescriptions and appointment scheduling inquires" in "violation of various state tort claims and state and federal laws").

Defendant argues the Crime-Tort Exception does not apply because it intercepted the communications for the purpose of making money, not to commit a crime or a tort. However, this approach does not comport with the statutes text. "The text points to the 'purpose of committing any criminal or tortious act.'" *Stein*, 2025 WL 580556, at *6. As the *Stein* Court explains, the statute requires the "act" to be criminal or tortious, "but the 'purpose' does not need to be criminal or tortious." *Id*., at *6 ("The placement of 'criminal or tortious' is telling. That phrase modifies 'act,' not 'purpose.' The statute does not require a 'criminal or tortious purpose.' It requires a purpose of committing an act – an act that is criminal or tortious."); *see also Jarrell*, 2025 WL 81305, at *7 ("As alleged, the interception and disclosure are inseparable because [defendant] intercepted the communications containing [protected health information] material *for the purpose of disclosure*. That was the relevant 'intent' for the purpose of the wiretapping claim which [defendant] is alleged to have had contemporaneously with the interception. [Defendant] cannot escape this result by pointing to the 'marketing and revenue generation' purpose also alleged by Plaintiff."). Here, the Complaint sufficiently alleges that Defendant disclosed Plaintiffs' health

information to a third party, with the intent of the act of unauthorized disclosure, in violation of federal and state law. (Dkt. No. 1, ¶¶ 1-4, 19, 28-30, 32-34, 44-51, 86-102, 106-108, 110-113).

"Even if the carve-out required a criminal or tortious purpose, it would be odd to exclude an otherwise criminal or tortious act solely because it was also motivated by financial gain. The existence of an underlying financial motivation does not mean that the act lacked a criminal or a tortious purpose. That's like saying that a bank robber's purpose was not to commit a crime – it was to make money." *Stein*, 2025 WL 580556, at *6. "[T]he existence of a financial motivation is not a get-out-of-liability-free card. The statute does not exclude conduct simply because someone acted with a financial purpose." *Id*. The cases Defendant cites to for support of its 'criminal or tortious purpose' argument do not hold up to scrutiny on review. *Traficant v. C.I.R.*, 884 F.2d 258, 266 (6th Cir. 1989), is distinguishable because there was no evidence the recordings were ever used for an unlawful scheme, unlike here where it is alleged Defendant's recordings here which were illegally disclosed to third parties. Furthermore, the *Traficant* Court refused to suppress the recording, concluding Title III was not intended "to protect wrongdoers..." *Id*. The *Underhill* court concluded the recordings were made in violation of a Tennessee misdemeanor to knowingly make, possess, or store a gambling record, holding the communications were "intercepted for the purpose of committing a criminal act." *Underhill*, 813 F.2d at 111 (also holding "Congress did not intend [ ] to shield the very people who committed the unlawful interceptions from the consequences of their wrongdoing.").

Plaintiffs' well pleaded allegations satisfy the elements of an ECPA claim and that the Crime-Tort Exception applies here. Defendant's argument that their purpose was for profits related to marketing and/or advertising and it lacked the requisite intent must be rejected for the reasons provided herein and Defendant's Motion must be denied.

**B. Plaintiffs Plausibly Allege Claims Under Kentucky and Illinois Common Law**

Defendant Baptist Health contends that neither Kentucky nor Illinois recognizes a common-law breach-of-confidence claim for physician–patient confidentiality and cites two recent federal district court decisions: *Viviali v. One Point HR Sols., LLC*, No. CV 2:24-185-DCR, 2025 WL 1158740 (E.D. Ky. Apr. 21, 2025) and *Stinson v. Yum! Brands, Inc.*, No. 3:23-cv-183-DJH-LLK, 2025 WL 2755879 (W.D. Ky. Aug. 29, 2025). Defendant overreads those cases and ignores persuasive authorities recognizing the tort in the medical context and Plaintiffs' well-pled, relationship-grounded allegations.

In *Bowen v. Paxton Media Group, LLC*, the Western District declined to dismiss a breach of confidence claim at the pleading stage where the governing law was uncertain. *Bowen v. Paxton Media Grp., LLC*, No. 5:21-CV-00143-GNS, 2022 WL 4110319, at *7 (W.D. Ky. Sept. 8, 2022). In that case, Defendant argued Plaintiffs' breach of confidence claim should be dismissed because it is not a tort recognized in Kentucky, however, because it was uncertain which states' laws would apply, the court declined to dismiss the breach of confidence claim as a matter of law at this juncture. *Id*.

Thus, here, Defendant's contrary position that Kentucky recognizes "breach of confidence" only as a constructive-trust remedy and that Illinois excludes physician–patient confidentiality as a tort, cannot carry a Rule 12(b)(6) dismissal at the pleadings where Plaintiffs plausibly allege unauthorized disclosures in the context of an acknowledged confidential relationship and express privacy commitments. *See* (Dkt. No. 21, pp. 18-19). At the very least, any choice-of-law and remedial-label issues should be deferred; Defendant itself assumes Illinois law could govern one of Plaintiffs' claims. *Id.* at 19. At minimum, whether Kentucky or Illinois law supplies the governing rule for each Plaintiff presents a choice-of-law and remedial question unsuited for resolution on a Rule 12(b)(6) record. Defendant itself acknowledges one Plaintiff is an Illinois

citizen and assumes, for purposes of its motion, that Illinois law could govern that Plaintiff's claims. *Id*.

Defendant's reliance on *Viviali* and *Stinson* is misplaced as those cases are materially different from the facts presented here. Both *Viviali* and *Stinson* arose in the context of generic data breaches unrelated to the medical provider context. Neither case involved a healthcare provider with a direct physician-patient relationship to the plaintiffs. Here, Plaintiffs allege precisely that Defendant, as their medical provider, collected and disclosed confidential health information conveyed in the course of medical care.

Furthermore, Illinois authority further supports actionable duties of confidentiality in the medical context. As *Geisberger* explained, breaches of confidential relationships substantially overlap with contract duties, and actionable disclosures encompass personal medical information such as a patient's condition, diagnosis, or treatment; the court grounded this in statutory privilege, the Hippocratic Oath, and the Canons of Medical Ethics. *Geisberger v. Willuhn*, 72 Ill. App. 3d 435, 438-39, 390 N.E.2d 945, 948 (1979). The court found that, "for all practical purposes, the breach of a confidential relationship and the breach of contract are probably co-extensive." *Id*. "In other words, those disclosures which violate the statutory privilege also define what is actionable under a contract theory." *Id*. "The cases that have recognized the contract theory as a cause of action make it clear that the action lies in the disclosure of "personal" information, such that; information relating to the patient's mental or physical condition or the physician's diagnosis or treatment." *Id*.; *Horne v. Patton* (1973), 291 Ala. 701, 287 So.2d 824, 831. Plaintiffs' allegations fit squarely within these principles. They plead a confidential physician–patient relationship, express privacy assurances, and unauthorized disclosures of nonpublic medical communications to third parties via embedded tracking tools. (Dkt. No. 1, ¶¶ 228-238).

In addition, the Ohio Supreme Court in *Biddle* held that "a more appropriate basis [for the tort] can be found in the nature of the physician-patient relationship itself, either because of its fiduciary character or because it is customarily understood to carry an obligation of secrecy and confidence," and that "an action for breach of confidence should stand in its own right, . . . as an independent tort . . . ." *Biddle v. Warren Gen. Hosp.*, 1999-Ohio-115, 86 Ohio St. 3d 395, 715 N.E.2d 518. The Sixth Circuit likewise read *Biddle* "to establish an independent tort, foreclosing attempts to recharacterize such claims as property-based theories." *Norris v. Smart Document Sols., LLC*, 483 F. App'x 247, 249-50 (6th Cir. 2012). "The court in *Norris* noted that Biddle's clear instruction that Norris's cause of action is its own independent tort forecloses an argument that her action should be understood as one for the long- recognized tort of wrongful taking of personal property." *Id.*; *see also Petrillo v. Syntex Lab'ys, Inc.*, 148 Ill. App. 3d 581, 499 N.E.2d 952 (1986) ("public policy favoring physician-patient confidentiality and fiduciary nature of physician-patient relationship justified prohibition against ex parte communications.").

**1. Plaintiffs Adequately Plead Intrusion**

Both Kentucky and Illinois law recognize a claim for intrusion upon seclusion. *Lawlor v. N. Am. Corp. of Ill.,* 2012 IL 112530, ¶ 34 & n.4, 983 N.E.2d 414 (2012) ("One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person.") (quoting Restatement (Second) of Torts § 652B (1977)); *Burns v. Masterbrand Cabinets, Inc.*, 369 Ill. App. 3d 1006, 874 N.E.2d 72 (Ill. App. Ct. 2007); *McCall v. Courier-Journal and Louisville Times Co.*, 623 S.W.2d 882, 887 (Ky. 1982); *Pearce v. Whitenack*, 440 S.W.2d 392, 400-01 (Ky. Ct. App. 2014). The cause of action for intrusion upon seclusion comes from individual's long respected right to privacy. *Melvin v. Burling*, 141 Ill. App. 3d 786, 789 (1986))

Even the voluntary disclosure of private facts can constitute an unauthorized intrusion when the "voluntary disclosure" was obtained through the use of deceptive conduct. *Johnson v. K Mart Corp.*, 311 Ill. App. 3d 573, 578 (2000). In *Johnson v. K Mart Corp.*, the employer hired private investigators to pose as employees and obtain highly personal information about the employer's employees. *Id.* The employer-defendant argued that because the plaintiff-employees disclosed their private information to the investigators *voluntarily*, the employees could not state a claim for unauthorized intrusion. *Id.* The Illinois Court of Appeals disagreed, stating:

> It is true, as defendant argues, that plaintiffs willingly provided these personal details to the investigators. However, we believe that the means used by defendant to induce plaintiffs to reveal this information were deceptive. Specifically, we believe that the act of placing private detectives, posing as employees, in the workplace to solicit highly personal information about defendant's employees was deceptive. A disclosure obtained through deception cannot be said to be a truly voluntary disclosure. Plaintiffs had a reasonable expectation that their conversations with "coworkers" would remain private, at least to the extent that intimate life details would not be published to their employer.

*Id.* at 578-579.

The same is true here. Although Plaintiffs voluntarily disclosed information to Defendant on Defendant's Website, Plaintiffs reasonably believed that such information would remain confidential and between Defendant and the respective Plaintiff *only*. (Dkt. No. 1, ¶¶ 122, 138, 154, 170). Defendant, on the other hand, used deceptive means to in configuring and deploying the Tracking Tools on its Website without Plaintiffs' knowledge or consent. *Id.* ¶¶ 1, 4, 18-19, 50, 61-63, 69-75, 78-85, 86-102. Secretly deploying software tracking technology designed to surveil and intercept patient website activity is the digital equivalent of the physical surveillance held actionable in *Johnson*.

In obtaining and sharing Plaintiffs' most private information without their knowledge or consent and using the Plaintiffs' own information against their own interests, Defendant engaged in an 'offensive prying' sufficient to state a claim. *See Johnson*, 311 Ill. App. 3d at 578-579.

Plaintiffs allege Defendant covertly intercepts patients' communications using the Unauthorized Parties' code embedded on the Website ('Tracking Tools') and transmits their Private Information to Unauthorized Parties without their consent. (Dkt. No. 1, ¶ 4). The interception and conveyance of patients' private health information constitutes an electronic intrusion upon patients' private affairs, an intentional prying enabled by covert code, not mere downstream "publication." Plaintiffs further allege "without consent, Defendant has knowingly embedded these sophisticated tracking technologies on its Website, causing its patients' sensitive communications and online activity, including Private Information, to be transmitted to the Unauthorized Parties without consent." *Id.* ¶ 19. "The Tracking Tools secretly instructed patients' browsers to intercept and duplicate the patients' communications with Defendant (in real time) and to send those communications to Unauthorized Parties. These transmissions occurred contemporaneously, invisibly, and without the patients' knowledge." *Id.* ¶ 49. Defendant's reliance on decisions deeming website tracking claims "disclosure-based" ignores Plaintiffs' detailed allegations of real-time interception at the point of communication. At the pleadings stage, those facts plausibly allege an intentional intrusion highly offensive to a reasonable person, especially in the medical context. *Id.* ¶¶ 239–253.

**2. Plaintiffs Plausibly Allege Unjust Enrichment, Including Enrichment at Their Expense**

The Illinois Supreme Court established the foundational elements of unjust enrichment is: to state a cause of action, a plaintiff must allege that (1) the defendant has unjustly retained a benefit, (2) the defendant's retention has led to the plaintiff's detriment, and (3) the defendant's retention "violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145 (1989).

The Kentucky Supreme Court articulated the three elements of unjust enrichment in *Superior Steel, Inc. v. Ascent at Roebling's Bridge*, LLC: "(1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of that benefit without payment for its value." *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770 (2017) (citation omitted). Kentucky courts apply this doctrine flexibly in equity: as stated in *Lipson v. University of Louisville*, 556 S.W.3d 18 (2018), ("the equitable doctrine of unjust enrichment is applicable as a basis of restitution to prevent one person from keeping money or benefits belonging to another.") (citation omitted).

Plaintiffs' allegations map directly onto the Kentucky and Illinois elements. Defendant received a benefit (enhanced, targeted advertising and reduced marketing costs) at the patients' expense (their private health data, provided in confidence as part of paid medical services). (Dkt. No. 1, ¶¶ 178-181; 121; 137; 248; 255-261). Defendant appreciated that benefit by using it to reduce advertising spend. *Id*. And Defendant retained that benefit without compensating patients, whose data was disclosed without consent and whose confidentiality expectation was defeated. *Id*.

Defendant contends Plaintiffs have not alleged detriment or expense. But the Complaint alleges the opposite: Defendant extracted patients' Private Information in the course of medical relationships and site interactions, then monetized and leveraged it for enhanced advertising and reduced marketing costs, while depriving patients of the confidentiality, control, and benefit of their bargain that formed part of the services they paid for. *Id*. Plaintiffs allege they paid for healthcare, provided data to obtain care, and would not have paid or would have paid less had they known of the undisclosed disclosures; they further allege loss of control, diminished value of their data, and loss of the benefit of their bargain. *Id*. ¶¶ 106-107. Plaintiffs plead that Defendant should disgorge unlawful or inequitable proceeds it received. *Id*. ¶¶ 260-261.

Those allegations plausibly plead both enrichment to Defendant and corresponding detriment to Plaintiffs sufficient to proceed under Kentucky and Illinois unjust enrichment principles. The measure and proof of enrichment and detriment are fact questions inappropriate for dismissal.

**3. Plaintiffs Plausibly Allege Breach of Implied Contract**

Defendant argues Plaintiffs "do not adequately allege the basic elements for forming a contract for their implied contract claim." (Dkt. No. 21, pp. 22-23). Rule 12(b)(6), however, requires only well-pleaded facts that render the claim plausible, not the ultimate proof of contract formation or terms, issues typically reserved for discovery and factfinding. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. At this stage, Plaintiffs allege mutual assent by conduct, consideration, definite implied terms, breach, and damages, all tethered to specific factual averments in the Complaint. Dismissal should be denied.

***i. Kentucky Law: Implied-in-Fact Contracts Arise from Conduct and Mutual Assent***

Kentucky recognizes implied-in-fact contracts as "true contract[s]" formed by conduct manifesting mutual assent. *Furtula v. Univ. of Kentucky*, 438 S.W.3d 303, 308 (Ky. 2014) (as modified June 23, 2014) (an implied contract "requires the agreement of the promisor to be bound" and may be inferred from conduct evidencing "mutual assent" and an "intentional manifestation of assent"). Kentucky's longstanding principles similarly recognize obligations implied from the parties' dealings, course of conduct, and reasonable expectations. *See Dorton v. Ashland Oil & Ref. Co*., 303 Ky. 279, 197 S.W.2d 274, 275–76 (1946) (assent and obligations may be inferred from circumstances); *Israel's Adm'r v. Rice*, 295 Ky. 360, 174 S.W.2d 517, 518–19 (1943) (same). Federal courts applying Kentucky law allow privacy-promise implied-contract claims in the data context to proceed where plaintiffs plausibly allege an exchange of personal data and payment for

services against confidentiality commitments. *See McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 820–23 (E.D. Ky. 2019) (denying dismissal of implied-contract claim grounded in privacy promises); *Bowen*, 2022 WL 4110319, at *7–9 (similar). These authorities reflect the "meeting of the minds" standard that turns on the parties' manifested conduct and reasonable inferences—quintessential Rule 12 questions.

The common-law backdrop likewise recognizes that mutual assent can be inferred without formal writings. *See* Restatement (Second) of Contracts § 22 (assent may be manifested by conduct even if the precise moment of formation is indeterminate); *In re Penn. Cent. Transp. Co.*, 831 F.2d 1221, 1228 (3d Cir. 1987) ("[a]n implied-in-fact contract is a true contract arising from mutual agreement and intent to promise, but where the agreement and promise have not been verbally expressed. The agreement is inferred from the conduct of the parties."); *Baltimore & O.R. Co. v. United States*, 261 U.S. 592, 597 (1923) (Holmes, J.) (agreement may be inferred from conduct).

Applying these standards, Plaintiffs allege they provided Private Information and paid for care as a condition of using Defendant's website/patient portal and obtaining services, with the reasonable expectation formed by Defendant's privacy promises that Defendant would safeguard and not disclose their Private Information without consent. (Dkt. No. 1, ¶¶ 3-4; 264; 265-266). Those allegations sufficiently plead an implied-in-fact contract under Kentucky law. Plaintiffs allege Defendants operates the Website and encourages patients to use it to search for providers, explore services, pay for care, access the patient portal, and register for programs, during which visitors input sensitive Private Information. *Id.* ¶¶ 3, 116-119. In doing so, Defendant also makes express promises to Plaintiffs and the Class Members that it will and is required to keep their Private Information confidential. *Id.* ¶ 108. Plaintiffs and Class Members provided Private Information and compensation for medical care as a condition of utilizing Defendant's digital

platforms and receiving services and allege an implied promise that Defendant would safeguard and not disclose their Private Information without consent. *Id*. ¶¶ 105-107; 264; 265-266. Plaintiffs specifically allege they would not have entrusted Private Information, used the Website, or paid for services absent that implied commitment to confidentiality and non-disclosure. *Id*. ¶¶ 106-107; 265-266.

***ii. Illinois Law: Elements and Assent by Conduct in Sensitive-Information Contexts***

Illinois likewise recognizes contracts implied in fact, formed through conduct manifesting mutual assent, and enforceable on traditional elements. *See Trapani Constr. Co. v. The Elliot Group, Inc.*, 2016 IL App (1st) 143734, ¶ 42 (offer, acceptance, consideration may be inferred from conduct); *Heavey v. Ehret*, 166 Ill. App. 3d 347, 354 (1988) (implied contracts arise from "a promissory expression that is inferred from circumstantial evidence of an intent to be bound"). Furthermore, the court in *Flores* noted in the context of data, "it is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of . . . sensitive personal information would not imply the recipient's assent to protect the information sufficiently." *Flores v. Aon Corporation*, 2023 IL App (1st) 230140; *Olson v. Ferrara Candy Company*, 2025 IL App (1st) 241126.

The Complaint alleges precisely that: a patient-provider relationship in which Plaintiffs provided Private Information and paid for care while using Defendant's Website and portal; Defendant's own privacy statements and HIPAA-aligned representations; and the patients' reasonable expectation Defendant would not disclose their data without consent. (Dkt. No. 1, ¶¶ 12; 106; 108; 110; 264-267). Those facts plausibly allege offer, acceptance by conduct, consideration, and implied confidentiality terms under Illinois law. One Plaintiff (R.B.) is an Illinois citizen and former patient who used the Website and patient portal to communicate Private

Information, paid for healthcare services, and alleges an expectation of confidentiality that Defendant would not share her Private Information with third parties without consent. The Complaint references Defendant's Privacy Policy and website terms, representing that certain uses or disclosures occur only with written consent and stating that Defendant "does not use your data for retargeting or remarketing," reinforcing the implied confidentiality promise. *Id*. ¶¶ 107-113.

***iii. Application: Plaintiffs Plead Existence, Performance, Breach, and Damages***

Plaintiffs allege an implied-in-fact contract formed when they provided Private Information and payment to obtain healthcare services via Defendant's Website and patient portal, in the context of Defendant's privacy representations and the established duty of medical confidentiality, giving rise to a tacit understanding that Defendant would safeguard and not disclose their Private Information without consent. *Id*. Plaintiffs allege that, as a condition of using Defendant's digital platforms and receiving services, they provided Private Information and compensation; that upon providing their Private Information, they and Defendant entered implied contracts whereby Defendant agreed to safeguard and not disclose their Private Information without consent; and that they would not have entrusted such data absent this implied commitment. *Id*. ¶¶ 263-268. Plaintiffs further allege they used the Website and portal to communicate Private Information "on numerous occasions" in connection with receiving care. *Id*. ¶ 116.

***Performance.***

Plaintiffs allege they performed by providing their Private Information, utilizing the Website and portal in connection with care, and paying for healthcare services. Each Plaintiff alleges receipt of and payment for healthcare services and use of the Website/portal to communicate Private Information to Defendant. *Id*.

***Breach.***

Plaintiffs allege Defendant breached by embedding tracking tools that intercepted and disclosed patients' Private Information to third parties (Google, Microsoft, Adobe) for marketing and analytics without consent, contrary to the implied promise of confidentiality and Defendant's own representations. *Id*. ¶¶ 51-85. The Complaint alleges Defendant installed Tracking Tools that intercepted, duplicated, and transmitted patients' communications and Private Information including searches for conditions, providers, locations, portal access, and identifiers to Google, Microsoft, and Adobe without consent. *Id*. ¶¶ 86-90. Plaintiffs specifically allege Defendant's disclosures were without their knowledge or authorization and contrary to Defendant's privacy statements, including that it "does not use your data for retargeting or remarketing." *Id*. ¶¶ 107-113.

***Damages.***

Plaintiffs allege loss of benefit of the bargain (they paid for services with confidentiality that they did not receive), invasion of privacy, loss of control and diminution in value of their Private Information, statutory damages, and ongoing risk and targeted advertising harms. *Id*. ¶ 5. *Meta Pixel I*, 647 F. Supp. 3d at 802 (noting that the disclosure of plaintiff's medical information is an intangible injury); *In re Group Health Plan Litig.*, 709 F. Supp. 3d 707, 714-715 (D. Minn. 2023) (finding plausible damages based on claims of loss of the benefit of the bargain and diminution in value of Private Information).

## V. CONCLUSION

As set forth above, Plaintiffs have plausibly alleged their claims. As such, Defendant's Motion must be denied in its entirety.

Date: June 25, 2026

*<u>/s/ Jessica A. Wilkes</u>*
William B. Federman*

Jessica A. Wilkes*
**Federman & Sherwood**
10205 N. Pennsylvania Ave
Oklahoma City, OK 73120
Telephone: (405) 235-1560
E: wbf@federmanlaw.com
E: jaw@federmanlaw.com

Don Bivens*
Maxwell K. Weiss*
**Don Bivens, PLLC**
15169 N. Scottsdale Road, Suite 205
Scottsdale, Arizona 85254
Telephone: (602) 762-2661
E: don@donbivens.com
E: max@donbivens.com

*Attorneys for Plaintiffs*
*and Proposed Class*

**Pro Hac Vice*