**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**

| | |
|---|---|
| R.B., S.C., J.S., and J.F., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BAPTIST HEALTHCARE SYSTEM, INC.,<br><br>Defendant. | Case No. 3:26-cv-00295-CHB<br><br>The Honorable Claria H. Boom,<br>United States District Court Judge |

**DEFENDANT BAPTIST HEALTHCARE SYSTEM, INC.'S REPLY BRIEF IN SUPPORT OF RULE 12(B)(6) MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

**INTRODUCTION**......................................................**1**

A. PLAINTIFFS' FEDERAL WIRETAP ACT COUNT FAILS TO STATE A CLAIM AS A MATTER OF LAW......................................................1

B. THERE IS NO STANDALONE TORT OF BREACH OF CONFIDENCE UNDER KENTUCKY OR ILLINOIS LAW......................................................7

C. PLAINTIFFS' INTRUSION CLAIM IS BASED ON AN ALLEGED DISCLOSURE, NOT AN INTRUSION. ......................................................9

D. PLAINTIFFS' "BENEFIT OF THE BARGAIN" THEORY FOR UNJUST ENRICHMENT HAS BEEN ROUTINELY REJECTED."......................................................11

E. PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED IMPLIED CONTRACT FOR THEIR BROAD PUTATIVE NATIONWIDE CLASS. ......................................................13

**CONCLUSION** ......................................................**14**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................14

*Biddle v. Warren Gen. Hosp.*,
*1999-Ohio-115*, 86 Ohio St. 3d 395....................9

*Bowen v. Paxton Media Grp., LLC*,
2022 WL 4110319 (W.D. Ky. Sept. 8, 2022)....................7, 8

*Combs v. Int'l Ins. Co.*,
354 F.3d 568 (6th Cir. 2004)....................9

*Dieffenbach v. Barnes & Noble, Inc.*,
887 F.3d 826 (7th Cir. 2018)....................13

*Dinerstein v. Google, LLC*,
484 F. Supp. 3d 561 (N.D. Ill. 2020)....................9

*Dinerstein v. Google, LLC*,
73 F.4th 502 (7th Cir. 2023)....................9, 13

*Doe v. Genesis Health Sys.*,
2024 WL 3890164 (C.D. Ill. Aug. 21, 2024)....................11

*Doe v. Talkiatry Mang't Servs., LLC*,
816 F. Supp. 3d 1206 (C.D. Cal. 2026)....................6

*Eakes v. Caudill*,
655 F. Supp. 3d 616 (W.D. Ky. 2023)....................8

*Fero v. Excellus Health Plan, Inc.*,
236 F. Supp. 3d 735 (W.D.N.Y. 2017)....................12

*Geisberger v. Willuhn*,
72 Ill. App. 3d 435, 390 N.E.2d 945 (1979)....................8

*Hannant v. Culbertson*,
2025 WL 2413894 (C.D. Aug. 20, 2025)....................8, 9

*Hardt v. Reliance Standard Life Ins. Co.*,
560 U.S. 242 (2010)....................5

*Hartley v. University of Chicago Medical Center*,
2023 WL 7386060 (N.D. Ill. Nov. 8, 2023)....................11

*In re High Fructose Corn Syrup Antitrust Litig.*,
216 F.3d 621 (7th Cir. 2000)....................1, 2

*Jarrell v. Adena Health System*,
2025 WL 81305 (S.D. Ohio Jan. 13, 2025)....................5, 6

*Johnson v. Kmart Corp.,*
311 Ill. App. 3d 573 (2000)....................10

*Juenger v. Deaconess Health Sys., Inc.*,
2025 WL 2780221 (S.D. Ill. Sept. 30, 2025)....................11

*Kidd v. Thomson Reuters Corp.*,
925 F.3d 99 (2d Cir. 2019)....................3

*Kurowski v. Rush System for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023)....................9, 11

*In re Lurie Children's Hosp. Data Sec. Litig.*,
2025 WL 2754760 (N.D. Ill. Sept. 27, 2025)....................12, 13

*Martinez v. Mentavi*,
2025 WL 3780427 (W.D. Mich. Oct. 9, 2025)....................6

*Morissette v. United States*,
342 U.S. 246 (1952)....................3

*Nat'l Labor Relations Bd. v. Starbucks Corp.*,
159 F.4th 455 (6th Cir. 2020)....................5

*People v. Davis*,
--- N.E.3d ----, 2026 IL App (3d) 250122....................3

*Ruan v. United States*,
597 U.S. 450 (2022)....................3

*State v. Wilson*,
830 N.W.2d 849 (Minn. 2013)....................3

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025)....................4

*Stein v. Edward-Elmhurst Health*,
2026 WL 594752 (N.D. Ill. Mar. 3, 2026)....4

*Stinson v. Yum! Brands, Inc.*,
2025 WL 2755879 (W.D. Ky. Aug. 29, 2025)....8

*In re SuperValu, Inc.*,
925 F.3d 955 (8th Cir. 2019)....12

*Sweat v. Houston Methodist Hospital*,
2024 WL 3070184 (S.D. Tex. June 20, 2024)....4

*Sweat v. Houston Methodist Hospital*,
2025 WL 2697111 (S.D. Tex. Sept. 22, 2025)....5

*Tele-Count Engineers, Inc. v. Pacific Tel. & Tel. Co.*,
168 Cal. App. 3d 455 (1985)....7, 8

*Tilton v. Playboy Entm't Grp., Inc.*,
554 F.3d 1371 (11th Cir. 2009)....3

*Traficant v. C.I.R.*,
884 F.2d 258 (6th Cir. 1989)....5, 6

*United States v. Bailey*,
444 U.S. 394 (1980)....3

*United States v. Fortier*,
956 F.3d 563 (8th Cir. 2020)....3

*United States v. Gonyea*,
140 F.3d 649 (6th Cir. 1998)....4

*United States v. Ramamoorthy*,
949 F.3d 955 (6th Cir. 2020)....4

*United States v. Underhill*,
813 F.2d 105 (6th Cir. 1987)....5

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
425 U.S. 748 (1976)....2

*Viviali v. One Point HR Sols., LLC*,
2025 WL 1158740 (E.D. Ky. Apr. 21, 2025)....8

**Statutes, Rules & Other Authorities**

720 ILCS 5/17-0.5 ....................................................................................................................3

28 U.S.C. § 1292(b) ...................................................................................................................4

FED. R. CIV. PRO. R. 12(b)(6) ...........................................................................................1, 14

LAFAVE & OHLIN, *Criminal Law* § 5.1(a) ...........................................................................3

## INTRODUCTION

Plaintiffs' opposition brief proceeds from the same basic premise as their complaint. Plaintiffs make the broad policy argument that defendant Baptist Healthcare System, Inc.'s alleged use of tracking technologies on Baptist Health's public website, www.baptisthealth.com, violated their privacy rights and was otherwise wrong. But they do not show how this generalized policy grievance translates into plausibly stating any of the specific counts alleged as against Baptist Health in their complaint. Thus also, plaintiffs' complaint should be dismissed in its entirety with prejudice for failure to state a claim under Rule 12(b)(6).

Baptist Health respectfully submits the following reply brief in support of its Rule 12(b)(6) motion to dismiss:

### A. PLAINTIFFS' FEDERAL WIRETAP ACT COUNT FAILS TO STATE A CLAIM AS A MATTER OF LAW.

The fundamental dispute between the parties on this motion to dismiss is over plaintiffs' single claim under federal law for alleged violation of the federal Wiretap Act. (Dkt. # 21, *Mem. in Supp.* 6-15; Dkt. # 23, *Opp. Br.* 3-7.) On this claim, plaintiffs begin their opposition brief by characterizing the federal Wiretap Act's one-party consent rule as an "exception" to a general federal policy prohibiting all interceptions of any communication of any kind. (Dkt. # 23, *Opp. Br.* 3.) This is not a correct characterization of the law. The one-party consent rule is the policy choice Congress first made in 1968 to limit the scope of the federal Wiretap Act to third-party bugging, except in circumstances where one of the parties to the communication is making the interception for the express purpose of committing a crime or a tort. (Dkt. # 21, *Mem. in Supp.* 6-7.)

As the Seventh Circuit has explained: "Some states prohibit a person from recording his telephonic or other conversations without the other person's consent, but Title III does not, unless the person is both not acting under color of state law and has a criminal or tortious purpose." *In re*

*High Fructose Corn Syrup Antitrust Litig.*, 216 F.3d 621, 624 (7th Cir. 2000) (Posner, J.). "If by virtue of sections 2511(2)(c) or (d) an interception is not prohibited by Title III, there are *no* Title III restrictions on its use." *Id.* at 624 (emphasis in original). "Section 2511 exempts the conversations covered by it from the *entirety* of Title III." *Id.* at 625 (emphasis in original).

Plaintiffs argue "Defendant's conduct falls squarely within the Crime-Tort Exception," because Baptist Health allegedly "intended to violate various tort and criminal laws through the interception and then disclosure of Plaintiffs' communications," including "HIPAA's criminal prohibitions against disclosing 'individually identifiable health information' without authorization and Illinois' and Kentucky's laws prohibiting these same disclosures." (Dkt. # 23, *Opp. Br.* 4-5.)

Plaintiffs do not allege that Baptist Health's purpose in making the alleged interceptions was to violate the law or otherwise injure them tortiously, however. Nor could they plausibly do so. To the contrary, as set forth in Baptist Health's opening brief, plaintiffs allege that Baptist Health's purpose in making the alleged interceptions was simple: to engage in digital advertising, and to analyze the effectiveness of that advertising. As plaintiffs put it most basically: "*The Tracking Tools are used to gather, identify, target, and market products and services to Defendant's patients*." (Dkt. # 1, *Compl.* ¶ 32 (emphasis added).) This is a non-criminal, non-tortious purpose—as the Supreme Court has repeatedly held: "Advertising, however tasteless and excessive it sometimes may seem, is nonetheless dissemination of information as to who is producing and selling what product, for what reason, and at what price." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 765 (1976).

Moreover, to the extent plaintiffs are arguing that all that is required for the tortious or criminal conduct exception to apply is an allegation that, in hindsight, the defendant's actions in making an alleged interception may ultimately have violated some law, this argument is also

misguided. That is so because the argument conflates the *actus reus* for an alleged crime with the criminal *mens rea.* An *act* may violate the law, but that does not mean that the defendant had a criminal *purpose* in mind in taking that action.

These are two distinct things, as the Supreme Court has made clear. *See United States v. Bailey*, 444 U.S. 394, 402 (1980) ("Criminal liability is normally based upon the occurrence of two factors, 'an evil-meaning mind and an evil doing hand.'") (quoting *Morissette v. United States*, 342 U.S. 246, 251 (1952)); *Ruan v. United States*, 597 U.S. 450, 457 (2022) ("we have said that consciousness of wrongdoing is a principal as universal and persistent in mature systems of criminal law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil") (quotation omitted); LAFAVE & OHLIN, *Criminal Law*, § 5.1, pg. 311 (7th Ed. 2023) ("It is commonly stated that a crime consists of both a physical part and a mental part; that is, both an act or omission (and sometimes also a prescribed result of action or omission, or prescribed attendant circumstances, or both) and a state of mind.").

And, when it comes to a criminal statute using the statutory language "for the purpose of," this language establishes a "specific intent" requirement for the government to establish the *mens rea* element of that particular crime. *See Tilton v. Playboy Entm't Grp., Inc.*, 554 F.3d 1371, 1377 (11th Cir. 2009); *United States v. Fortier*, 956 F.3d 563, 566-67 (8th Cir. 2020); *State v. Wilson*, 830 N.W.2d 849, 853-54 (Minn. 2013); *People v. Davis*, --- N.E.3d ----, 2026 IL App (3d) 250122, ¶ 18 (720 ILCS 5/17-0.5; *cf. Kidd v. Thomson Reuters Corp.*, 925 F.3d 99, 106 (2d Cir. 2019); LAFAVE & OHLIN, *Criminal Law* § 5.1(a), pg. 312 (7th Ed. 2023) ("[m]any statutes defining conduct which is criminal employ words (usually adverbs) or phrases indicating some type of bad-mind requirement: 'intentionally' or 'with intent to . . .'; 'knowingly' or 'with knowledge that . . .'; '*purposely*' or *'for the purpose of*'") (emphasis added)).

And, as the Sixth Circuit has held, "[t]o commit a specific-intent crime, a defendant must 'do more than knowingly act in violation of the law.'" *United States v. Ramamoorthy*, 949 F.3d 955, 961 (6th Cir. 2020) (quoting *United States v. Gonyea*, 140 F.3d 649, 653 (6th Cir. 1998)). "He 'must also act with the purpose of violating the law.'" *Id.*

Plaintiff next string-cite a series of cases allegedly holding that an alleged legal violation in and of itself is enough for the crime-tort exception to apply. (Dkt. # 23, *Opp. Br.* 5-6.) The very first of these cases, however—*Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *5-6 (N.D. Ill. Feb. 21, 2025)—is presently on appeal before the Seventh Circuit, a fact which plaintiffs do not disclose.

Specifically, following plaintiffs' cited decision, the district court denied Edward-Elmhurst's motion for reconsideration, but in doing so also granted Edward-Elmhurst's motion to take an immediate appeal under 28 U.S.C. § 1292(b). *See Stein v. Edward-Elmhurst Health*, 2026 WL 594752, at *5 (N.D. Ill. Mar. 3, 2026) (certifying the following question for appeal: "Whether the crime-tort exception to the one-party consent rule in the Electronic Communications Privacy Act applies when a complaint alleges that the defendant acted with a lawful purpose, and does not allege that a defendant acted with a criminal or tortious purpose?").

The Seventh Circuit granted Edward-Elmhurt's permission to appeal on April 9, 2026 (7th Cir. Case No. 26-8004, *Order*), and the appeal is currently being briefed (7th Cir. Case. No. 26-1742). Thus, the entirety of the reasoning of the district court's *Edward-Elmhurst* decision—and all the cases just like it—should be imminently overruled.

Plaintiffs also cite the district court's decision in *Sweat v. Houston Methodist Hospital*, 2024 WL 3070184, at *4 (S.D. Tex. June 20, 2024). (Dkt. # 23, *Opp. Br.* 5.) In a subsequent opinion, however, the district court ultimately took a different view of the statute. *See Sweat v.*

*Houston Methodist Hospital*, 2025 WL 2697111 (S.D. Tex. Sept. 22, 2025). As the court stated: "Although the parties largely frame the inquiry as whether there is a triable fact issue necessary to determine whether Methodist violated HIPAA, the threshold issue is not whether Methodist violated HIPAA, *but whether it acted with the purpose of violating HIPAA*." *Id.* at *5 (emphasis added). And the court granted summary judgment because "[t]he uncontroverted summary judgment is that Methodist used the information received from its use of the Pixel only for the purpose of improving its *marketing and outreach*." *Id.* at *7 (emphasis added). To be sure, this is on summary judgment, but the analysis on the initial point regarding HIPAA and the exception—which is the same foundation for plaintiffs' argument for the statute to apply here—is strictly legal.

Plaintiffs cite one district court case from within the Sixth Circuit in the string-cite of cases: the Southern District of Ohio's decision in *Jarrell v. Adena Health System*, 2025 WL 81305, at *2-4 (S.D. Ohio Jan. 13, 2025). The *Adena* decision is not persuasive. In analyzing the parties' arguments regarding the exception the court noted "[t]he primary point of departure here, both between the parties herein and among the disparate caselaw, is the construction of 'purpose' in the clause above." *Id.* at *2. Yet, the court did not proceed to interpret the text of the statute, and what the language "for the purpose of" means in the context of a felony criminal statute, as Baptist Health has done in our opening brief here. (Dkt. # 21, *Mem. in Supp.* 8-13.) The court's analysis of the exception is thus contrary to the basic rule that "[i]n interpreting a statute, we begin, as always, with its text." *Nat'l Labor Relations Bd. v. Starbucks Corp.*, 159 F.4th 455, 469 (6th Cir. 2020) (citing *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010)).

The *Adena* court further stated in its opinion that "[n]either party enjoys the benefit of any Sixth Circuit precedent to answer the question in their favor." 2025 WL 81305, at *2. Why the court made this statement is unclear; the Sixth Circuit has decided at least two cases addressing

the exception, which the *Adena* court did not analyze. (Dkt. # 21, *Mem. in Supp.* 8-9; discussing *United States v. Underhill*, 813 F.2d 105, 108, 110-11 (6th Cir. 1987) & *Traficant v. C.I.R.*, 884 F.2d 258, 266 (6th Cir. 1989).) Thus, the court's decision in *Adena* did not take the basic steps that would be necessary to analyze the exception, and how the exception should be applied.

Plaintiffs claim "Defendant argues the Crime-Tort Exception does not apply because it intercepted the communications for the purpose of making money, not to commit a crime or a tort." (Dkt. # 23, *Opp. Br.* 6.) Plaintiffs do not cite any page in Baptist Health's brief to support this statement, and for good reason: that is not what Baptist Health has argued. Clearly, the exception can apply where the defendant's alleged purpose for the interception is to make money—an alleged interception made for the purpose of committing blackmail is the quintessential example where everyone would agree that the exception applies. (Dkt. # 21, *Mem. in Supp.* 7.)

Not all financial purposes are created equal, however. And here, from the allegations contained in plaintiffs' complaint, Baptist Health's alleged purpose was to engage in advertising on the Internet, and to analyze how well this advertising performed. (Dkt. # 1, *Compl.* ¶¶ 32, 121, 137, 153, 169, 178, 181, 248.)

This *purpose* is not criminal, and this *purpose* is not tortious, even if it turns out that Baptist Health's *actions* might ultimately turn out to have violated some other law. Thus also, as the Sixth Circuit put it in *Traficant*, 884 F.2d at 266, there is no "*specific unlawful intent* in making *these tapes*" at issue, and plaintiffs' federal claim under the federal Wiretap Act fails as a matter of law. *Martinez v. Mentavi*, 2025 WL 3780427, at *3-5 (W.D. Mich. Oct. 9, 2025); *see also Doe v. Talkiatry Mang't Servs., LLC*, 816 F. Supp. 3d 1206, 1210 (C.D. Cal. 2026) (dismissing federal Wiretap Act claim with prejudice; holding "mere collection of personal information for market research and advertising was not for the purpose of committing a crime or tort").

### B. There Is No Standalone Tort of Breach of Confidence Under Kentucky or Illinois Law

As Baptist Health showed in our opening brief, no independent tort claim for an alleged breach of confidence exists under either Kentucky or Illinois law for plaintiffs' allegations in this case. (Dkt. # 21, *Mem. in Supp.* 18.) In response, and without citing a single case from Kentucky or Illinois affirmatively holding that breach of confidence exists as a standalone tort, plaintiffs nonetheless maintain that dismissal is still inappropriate. (Dkt. # 23, *Opp. Br.* 8-9.)

Plaintiffs make four arguments for reaching this result: (1) that the breach of confidence issue presents choice-of-law questions "unsuited for resolution on a Rule 12(b)(6) record" (*id.* at 8); (2) that cases dismissing breach of confidence claims as not recognized do not apply outside the "context of generic data breaches unrelated to the medical provider context" (*id.* at 9); (3) that statutory and contract remedies in Illinois law for disclosure of medical information somehow implies a cause of action in tort for breach of confidence (*id.*); and, (4) that cases from the Ohio Supreme Court and the Sixth Circuit interpreting Ohio law are persuasive authority in favor of recognizing a breach-of-confidence tort (*id.* at 10). All these arguments fail.

*First*, plaintiffs' argument that "any choice-of-law and remedial-label issues should be deferred" is based on a misreading of their sole case in support. (Dkt. # 23, *Response*, at 8); *Bowen v. Paxton Media Grp., LLC*, 2022 WL 4110319 (W.D. Ky. Sept. 8, 2022). In *Bowen*, the court did allow a breach of confidence claim to advance beyond the motion to dismiss stage when it was unclear whether Kentucky, Virginia, or California law would apply. *Id.* at *7.

Crucially though, California law *does* recognize breach of confidence as a standalone tort. *See, e.g., Tele-Count Engineers, Inc. v. Pacific Tel. & Tel. Co.*, 168 Cal. App. 3d 455, 462 (1985) ("An actionable breach of confidence will arise when an idea, whether or not protectable, is offered to another in confidence, and is voluntarily received by the offeree in confidence with the

understanding that it is not to be disclosed to others, and it is not to be used by the offeree for purposes beyond the limits of the confidence without the offeror's permission.").

Thus, the choice-of-law analysis in *Bowen* could have materially changed the outcome. But that is not the case here: neither Kentucky nor Illinois recognize a standalone tort for breach of confidence. The claim fails irrespective of the choice of law. Thus also, this is not a situation where any choice of law inquiry needs to be made, because ultimately under whatever law might apply the legal result will be the same. *See Eakes v. Caudill*, 655 F. Supp. 3d 616, 620 (W.D. Ky. 2023) ("The choice-of-law analysis matters only if a conflict exists between the laws of the two states at issue, however.").

*Second*, plaintiffs attempt to distinguish between the Kentucky cases refusing to recognize breach-of-confidence claims in the data breach context from this case here, arising in the website privacy context. (Dkt. # 23, *Opp. Br.* 8-9 (addressing *Viviali v. One Point HR Sols., LLC,* 2025 WL 1158740 (E.D. Ky. Apr. 21, 2025) & *Stinson v. Yum! Brands, Inc.*, 2025 WL 2755879 (W.D. Ky. Aug. 29, 2025).) Neither *Viviali* nor *Stinson* rejected the plaintiffs' breach of confidence claims in those cases because they were factually insufficient, however; they rejected them because they found no such cause of action exists under Kentucky law. *Viviali,* 2025 WL 1158740, at *7; *Stinson*, 2025 WL 2755879, at *22.

Third, and relying on *Geisberger v. Willuhn,* 72 Ill. App. 3d 435, 438-39, 390 N.E.2d 945, 948 (1979), plaintiffs argue "Illinois authority further supports actionable duties of confidentiality in the medical context." (Dkt. # 23, *Opp. Br.* 9.) Here too this argument has already been tried and rejected as an overreading of the *Geisberger* case. *See Hannant v. Culbertson*, 2025 WL 2413894, at *17 (C.D. Aug. 20, 2025) ("The Court agrees with Defendant that *Geisberger* did not affirmatively find that the tort of implied duty of confidentiality exists under Illinois law, and joins

the other federal courts that have declined to break new ground in this area of state law.") (citing (1) *Kurowski v. Rush System for Health*, 659 F. Supp. 3d 931, 940-41 (N.D. Ill. 2023) (also refusing to recognize implied confidentiality tort for website privacy claim against healthcare provider under *Geisberger*); and (2) *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020) (generally "declin[ing] the invitation" to recognize tort claim for alleged breach of physician-patient confidentiality under Illinois law), *aff'd on other grounds* 73 F.4th 502, 516 n.4 (7th Cir. 2023).)

*Fourth*, and finally, plaintiffs note that the Ohio Supreme Court has recognized an independent tort claim for an alleged breach of physician-patient confidentiality. (Dkt. # 23, *Opp.* 10) (citing *Biddle v. Warren Gen. Hosp., 1999-Ohio-115*, 86 Ohio St. 3d 395).) There is no Ohio plaintiff involved in this case, however. Nor do plaintiffs provide any analysis as to why the Kentucky and Illinois Supreme Court would follow the Ohio Supreme Court's decision on this point, however, when thus far they have not done so. Even had plaintiffs provided this analysis, however, and as the Sixth Circuit has made plain, *See Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577-78, 597 (6th Cir. 2004) (declining to adopt novel interpretation of Kentucky law; "Federal courts hearing diversity matters should be extremely cautious about adopting substantive innovation in state law.") (quotation omitted).

### C. PLAINTIFFS' INTRUSION CLAIM IS BASED ON AN ALLEGED DISCLOSURE, NOT AN INTRUSION.

For their invasion of privacy by intrusion upon seclusion claim, plaintiffs argue Baptist Health's "reliance on decisions deeming website tracking claims 'disclosure-based' ignore Plaintiffs' detailed allegations of real-time interception at the point of communication." (Dkt. # 23, *Opp. Br.* 12.) Opp. 12.) Baptist Health's focus on this "disclosure" point comes straight from the allegations contained in plaintiff's complaint, however. Try as they might to backtrack in their

opposition brief, the allegations in plaintiffs' complaint on this count are clear: their claims are grounded in an alleged disclosure, not an intrusion. As plaintiffs allege in their invasion of privacy count itself: "The Private Information of Plaintiffs and Class Members consist of private and confidential facts and information that were never intended *to be shared* beyond private communications." (Dkt. # 1, *Compl.* ¶ 240 (emphasis added).)

Or, as they put it in the very first sentence of their complaint: "Plaintiffs bring this class action lawsuit to address Defendant's unlawful practice of *disclosing* Plaintiffs' and the putative class members' ('Class' or 'Class Members') confidential communications, personally identifiable information ('PII'), and protected health information ('PHI') to unauthorized third parties. . . ." (*Id.*, ¶ 1 (emphasis added); *see also id.*, ¶ 33 ("Plaintiffs' and Class Member's Private Information would have been disclosed to Unauthorized Parties via this technology but for Defendant's deliberate and intentional decision to install the Tracking Tools on its Website.").)

Plaintiffs argue "[e]ven voluntary disclosure of private facts can constitute an authorized intrusion when the 'voluntary disclosure' was obtained through the use of deceptive conduct." (Dkt. # 23, *Opp. Br.* 12.) Plaintiffs rely on *Johnson v. Kmart Corp.*, 311 Ill. App. 3d 573 (2000), for this statement. In *Johnson*, the employer hired private investigators to pose as employees to solicit personal information from coworkers, including family issues and health problems. *Id.* at 576. The court found a genuine issue of material fact as to whether that conduct—physical infiltration of the workplace by undercover agents extracting intimate personal disclosures—constituted an offensive or objectionable intrusion into the employees' seclusion. *Id.* at 578–79. The holding was narrow: it reversed summary judgment because a reasonable jury could find the physical, deceptive surveillance offensive. *Id.* at 579.

Plaintiffs' reliance on *Johnson* is also not a new tactic. In *Kurowski*, the plaintiff likewise relied on *Johnson*, arguing that "bugging patient communications devices and computers by placing Facebook and Google cookies on them" is actionable "regardless of whether any subsequent transmission of data is made to Facebook and Google." Opposition to Motion to Dismiss for Failure to State a Claim at 13–14, *Kurowski v. Rush Sys. for Health*, No. 1:22-CV-05380 (N.D. Ill. May 19, 2023). The court rejected the argument and dismissed the intrusion upon seclusion claim as a matter of law. *Kurowski*, 683 F. Supp. 3d at 848–49 (finding that the actual intrusion—the interception of patient communications—was "accomplished by third parties").

As with the court's holdings regarding *Geisberger*, the Illinois case law analyzing this same argument and claim has followed the analysis in *Kurowski*. *See, e.g., Doe v. Genesis Health Sys.*, 2024 WL 3890164, at *12 (C.D. Ill. Aug. 21, 2024) (finding no intrusion upon seclusion in the website privacy context where the offensive conduct was caused by the defendant's act of publication and not from the act of intrusion); *Juenger v. Deaconess Health Sys., Inc.*, 2025 WL 2780221, at *6 (S.D. Ill. Sept. 30, 2025) ("Nowhere has he alleged that Defendants surreptitiously intruded into a private domain (whether physically or virtually) where it had no business being."); *Hartley v. University of Chicago Medical Center*, 2023 WL 7386060, at *2–3 (N.D. Ill. Nov. 8, 2023) ("Since Plaintiff is complaining about what she thinks UCMC told Facebook, her complaints are with the publication, and not any intrusion.").

### D. PLAINTIFFS' "BENEFIT OF THE BARGAIN" THEORY FOR UNJUST ENRICHMENT HAS BEEN ROUTINELY REJECTED."

For unjust enrichment, plaintiffs argue the claim is adequately pled because "Defendant received a benefit (enhanced, targeted advertising and reduced marketing costs) at the patients' expense (their private health data, provided in confidence as part of paid medical services." (Dkt. # 23, *Opp. Br.* 13.) Plaintiffs do not cite one case to support this argument, and nor do they provide

the missing link for the cases that have decided the issue, and rejected plaintiffs' argument—how they themselves, personally, have lost the ability to capitalize on this claimed value. (Dkt. # 21, *Mem. in Supp.* 21-22 (collecting cases; *see also Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 755 (W.D.N.Y. 2017) (Wolford, C.J.) ("Although Plaintiffs' [Consolidated Master Complaint] alleges that the information compromised in the Excellus data breach commands a high price on the black market, the CMC lacks factual allegations to support the proposition that their personal information was made less valuable to them as a result of the breach, or that the data breach negatively impacted the value of their data such that Plaintiffs could not use or sell it.").)

Plaintiffs also argue their unjust enrichment claim has been adequately pled based on an alleged "overpayment" for healthcare theory: "they paid for healthcare, provided data to obtain care, and would not have paid or would have paid less had they known of the undisclosed disclosures. . . ." (Dkt. # 23, *Opp. Br.* 13.)

Here again, plaintiffs have not alleged how some undefined portion of their alleged payment for healthcare services that were undoubtedly received was allocated to privacy on Baptist Health's public facing website. Moreover, Baptist Health's public website is freely available for any member of the general public to use, www.baptisthealth.com, whether they are a Baptist Health patient or not. Moreover, as further detailed below, plaintiffs' proposed classes are not solely tethered to any claimed patient status, but rather include any individual, residing anywhere in the country, who happened to use Baptist Health's website.

Courts routinely dismiss alleged unjust enrichment allegations founded on this same basic "overpayment" theory, even solely as to actual patients or customers alone. *See In re Lurie Children's Hosp. Data Sec. Litig.*, 2025 WL 2754760, at *12 (N.D. Ill. Sept. 27, 2025) (dismissing same unjust enrichment claim; "Any monetary benefit that Plaintiffs (or their insurers) conferred

upon Lurie was for healthcare services, and the CAC does not claim that there was any separate outlay for data security."); *In re SuperValu, Inc.*, 925 F.3d 955, 966 (8th Cir. 2019) (rejecting same basic unjust enrichment theory where plaintiff "did not pay a premium for a side order of data security and protection") (quotation omitted); *Dinerstein v. Google, LLC*, 73 F.4th 502, 517 (7th Cir. 2023) (denying even Article III standing on this basis for claims against a healthcare provider; "Dinerstein has not alleged a defect in his medical care, and we again are not inclined to recognize the overpayment theory outside the product-liability context."); *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 829 (7th Cir. 2018) (rejecting claim for overpayment damages where plaintiff "does not contend that any of the items she purchased was defective or that Barnes & Noble promises any particular level of security, for which she paid").

### E. PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED IMPLIED CONTRACT FOR THEIR BROAD PUTATIVE NATIONWIDE CLASS.

Plaintiffs spend the final five pages of their opposition brief setting forth general statements regarding implied in fact contract law under both Kentucky and Illinois law and making the same general statements for how they have adequately pleaded the claim. (Dkt. # 23, *Opp. Br.* 14-18.) Just like with their complaint, however, none of plaintiffs' general statements in their opposition brief answer this fundamental question: What, exactly, is this alleged contract?

Indeed, throughout their argument, plaintiffs consistently rely on an alleged physician-patient relationship in order to state the claim. (*Id.*, at 15-17.) Yet, the actual putative classes plaintiffs seek to represent—and upon whose behalf they assert these claims (*see* Dkt. # 1, *Compl.*, pg. 84 ("**BREACH OF IMPLIED CONTRACT (<u>On Behalf of Plaintiffs *and the Classes*</u>)**")—is in no way tethered to any patient status. To the contrary, the classes are simply based upon whether or not someone allegedly visited Baptist Health's website, irrespective of any patient status. The "Nationwide Class" is defined to include "All *individuals* residing in the United States

who *used Defendant's Website* and had their Private Information, search terms, or detailed webpage information intercepted by and disclosed to third parties through the use of Tracking Tools." (*Id.*, ¶ 194 (emphasis added).) Their proposed Kentucky class is defined the same: "All *individuals* residing in Kentucky who *used Defendant's Website* and had their Private Information, search terms, or detailed webpage information intercepted by and disclosed to third parties through the use of Tracking Tools." (*Id.*, emphasis added.)

Plaintiffs do not cite one single precedent ever holding that simply visiting a website and searching that website for information is sufficient to form an implied in fact contract, much less under either Kentucky or Illinois common law. Plaintiffs simply want the Court to give them a free pass to discovery, without actually making factual allegations to support the required elements for stating the claim. The Supreme Court has made clear this is no longer the law. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## CONCLUSION

The Court should dismiss plaintiffs' complaint with prejudice for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

Dated: July 9, 2026

Respectfully submitted,

/s/ *David Carney*

David A. Carney (*admitted pro hac*)
**BAKER & HOSTETLER LLP**
127 Public Square, Suite 2000
Cleveland, OH 44114
Telephone: (216) 861-7634
Fax: (216) 696-0740
dcarney@bakerlaw.com

Scott M. McIntyre (KY Bar # 89913)
**BAKER & HOSTETLER LLP**
312 Walnut Street, Suite 3200
Cincinnati, OH 45202
Telephone: (513) 852-2622
Fax: (513) 479-9558
smcintyre@bakerlaw.com

*Attorneys for defendant Baptist Healthcare System, Inc.*